# Bradley v. Commonwealth.

(Decided Oct. 22, 1937.)

CLAUDE P. STEPHENS for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

At the January, 1936 term of the Floyd circuit court, the grand jury returned a true bill accusing appellant and his two brothers Sol and Woodrow Bradley, of willfully and feloniously shooting and wounding Ben Whittaker, with intention to kill, but so that he did not die thereby.

When the case was called the court sustained a motion for a severance, and the commonwealth elected to try appellant; the trial resulting in a verdict of guilty, fixing the penalty at two years' confinement in the penitentiary. Motion for a new trial was overruled, judgment entered, and appeal granted.

On the motion for a new trial there were five or more grounds set out in support, but it is here argued solely, that the court gave erroneous and prejudicial instructions, and failed to give the whole law of the case; the general objection being subdivided.

Counsel contends that appellant was seriously prejudiced because (a) the court failed to instruct on the law of accidental shooting; it being argued that appellant's proof was sufficient to authorize such instruction, and (b) the court failed to instruct the jury that upon reasonable doubt of the defendants having been proven guilty of either voluntary manslaughter or shooting by a reckless use of firearms, they should apply the penalty fixed by the statutes for the lesser offense.

At the time of the alleged shooting, Ben Whittaker was chief of police of Wayland, a small mining town in Floyd county. He was dressed in a regulation uniform, and on his cap had a badge marked "Chief of Police." While on duty, about 8:15 p. m., he went into a picture show. Prior to that time he had seen the appellant in town. Whittaker remained in the picture show for a few minutes, but upon being informed of a disturbance immediately outside the picture show, he went out. He failed to note any disturbance, but did see appellant standing on or near the steps of the building with a

pistol in his hand. Whittaker asked him what was the matter, and appellant struck him on the head with a .44 pistol, discharging it; the blow knocked Whittaker down, stunning him for a moment. Whittaker was not armed; he arose to his feet, grabbed appellant's hand and the two grappled or scuffled for a moment, the officer attempting to gain possession of the pistol. At this point, Kirkland, a deputy policeman came up and got hold of appellant's arm, and told him he was under arrest, and demanded his weapon. At this point, while appellant was trying to get in a shooting position, the pistol discharged. The shot knocked Whittaker down; broke his leg about 4 inches below the hip joint, splitting the thigh bone. It was claimed that during the scuffle appellant appeared to be getting at the hammer of the pistol. It is also claimed that when the officer fell, appellant said, "G. D. you, lay there and die."

Kirkland testifies that prior to the time Whittaker came out of the picture show there had been some trouble between appellant and a man by the name of Sanders. Appellant later admitted that in the difficulty between Sanders and his brother Woodrow, Sanders had slapped appellant, and had then struck Woodrow, whereupon appellant struck Sanders on the head with the butt of his pistol, and it was discharged. This was, as we gather from the record, the disturbance which brought Whittaker from the picture show.

As to the immediate occurrence, Kirkland substantially corroborates the testimony of his chief, except he says that he thought the shot was fired at the time he, or both he and Whittaker, had hold of appellant's pistol, and appellant was seeking to recover it. Witness later says that at the time of the discharge of the gun, he, witness, had his right hand on the barrel of the gun, appellant holding the stock, and the pistol discharged. Jack Denton, who was on the opposite side of the street, related the occurrence as was detailed by Whittaker, as did other witnesses who were in positions to view the scene of the shooting, some agreeing with Kirkland, but all agreeing with the one or the other. The slight difference is not of importance.

Appellant, testifying, goes into detail of the antecedent trouble between himself and brother on the one hand and Sanders on the other. He says Sanders was the person who went into the picture show after appellant

struck him, and came out with the chief of police. He also says that Whittaker ran up to him, grabbed him by the arm, and "sorter shook me, then I asked him, 'what do you mean?' and he said 'I will show you,' and about that time I hit him over the head with my gun; he didn't say he was an officer." When he hit Whittaker the gun discharged. Kirkland then came up and grabbed hold of the top of appellant's gun, shoved it down, and the gun a second time discharged. He also says he did not pull the trigger, but said the gun could be fired by "pulling the hammer back, and I am pretty sure that was the way it was fired when Kirkland grabbed hold of it." Appellant then handed the pistol to one of his brothers. He denied making the remark above recited, but admits that Whittaker at the time had no weapon, and at the time he shot his "hand was next to the trigger of the gun."

The brothers testify, but most of their testimony was directed to the previous difficulty between the Bradley brothers and Sanders. None of them were close enough to the difficulty between appellant and Whittaker, and later, Kirkland, to give any details which would, in other than a general way, shed any light. The three brothers all insist that they did not know that either Whittaker or Kirkland was a police officer, and further, that they did not notice that the chief was dressed in uniform or had his badge of office displayed.

Upon these facts, as substantially recited above, the court gave the jury 7 instructions. No. 1 was an instruction on the statutory offense, charged in the indictment, of willfully and maliciously shooting at another with intent to kill, for which the punishment is from 2 to 21 years. No. 2 was on the subject of shooting and wounding in sudden affray without previous malice the punishment being a fine of from $50 to $500, or jail imprisonment from 6 to 12 months, or both such fine and imprisonment. No. 6 was to the effect that if the jury should believe from the evidence beyond a reasonable doubt that the shooting of Whittaker resulted from the unintentional or careless discharge of the pistol in doing an unlawful act, the defendant should be found guilty and his punishment fixed at a fine of from $50 to $100, or 10 to 40 days' imprisonment in jail, or both.

No. 5 was what has come to be commonly called by

the courts, "the officer's instruction," which substantially told the jury that Whittaker at the time was a peace officer, and his duty was to arrest without warrant any person guilty of an offense committed in his presence, and it was likewise the duty of appellant to submit to arrest Further, they were told that if the jury should believe beyond a reasonable doubt that a public offense was committed by defendant in the presence of Whittaker, and that Bradley knew Whittaker was an officer, Whittaker had the right to arrest, and it was appellant's duty to submit, and if he refused to do so, and assaulted the officer with a deadly weapon, or if it should be believed beyond a reasonable doubt that appellant entered into mutual combat with the officer, and in either event thereby brought on the danger to himself, if any, then he was not to be extended the benefit of the plea of self-defense, as had been set out in correct terms in instruction No. 2.

Counsel for appellant selects a part of a paragraph in instruction No. 5, and subjects the entire instruction to criticism, saying generally, it is too complicated, and so involved that the jury could not understand its meaning. Our experience leads us to observe that in giving what is called "officer's instruction," under various phases and under varying facts, as in cases where either the arresting officer or the person arrested is killed or wounded, the lower court is compelled to give instructions which are to some extent involved and more or less complicated, as the facts may require. We recognize the difficulty of the undertaking, and recognize equally our inability to lay out any specific or definite form for guidance because of the great variation in facts.

It is stated specifically that the following phrase taken from the instruction is erroneous:

"And if the jury believe from the evidence to the exclusion of a reasonable doubt that the defendant committed a public offense in the presence of the marshal aforesaid, and knew the said Whittaker was a marshal and attempted to arrest the defendand for said offense committed in his presence, it was the duty of defendant to submit."

It is argued that it could not be ascertained by the jury whether the expression "beyond a reasonable doubt" applied to the commission of the offense in the officer's presence, or as to whether or not appellant

knew that Whittaker was at the time an officer. Our judgment is that it related to the question of a public offense having been committed in the presence of the officer; but if this be not the proper construction, as we view the instruction, it was not in this respect prejudicially erroneous. Instead of having the effect to deprive him of any substantial right, it was to his favor. As viewed by counsel, it required the jury to believe beyond a reasonable doubt that accused then knew that Whittaker was an officer, before he had to submit to arrest.

It is also contended that the use of the language, "for said offense committed in his presence," was calculated to impress the jury that the court meant to advise that there had been a public offense committed in the officer's presence. This contention might be of merit, if this were the only advice to the jury. But when the instruction is read as a whole, and in connection with other instructions, it cannot be conceived that the jury selected these few words and formed a conclusion, without regard to the remainder, or others, that the court intended to tell the jury that the appellant in fact had committed a public offense in the officer's presence. The instruction may be inartistically phrased, but to us it seems to have presented the law correctly on this phase of the case.

We pointed out above that the court gave an instruction on involuntary shooting and wounding. Counsel makes no complaint of this instruction, but asserts that the court should have further instructed the jury that they should acquit defendant if the shooting was accidental. What counsel means to assert, as we read the argument, is that the court should have instructed the jury that if they should believe from the evidence that the shooting was accidental, the result of the handling of a weapon in a lawful manner, or in doing some lawful act, they should find him not guilty. Roberson's Criminal Law (2nd Ed.) sec. 27. The case presented to us does not call for any such instruction. It falls clearly within the court's reasoning and rulings in the cases of Speaks v. Com., 149 Ky. 393, 149 S. W. 850; Held v. Com., 183 Ky. 209, 208 S. W. 772; Davis v. Com., 193 Ky. 597, 237 S. W. 24, 23 A. L. R. 1551; King v. Com., 253 Ky. 775, 70 S. W. (2d) 667. In all these cases we held, as we have time and time again, that it constitutes involuntary manslaughter or involuntary wounding if a person causes death or injury by

the reckless and careless handling of a weapon in doing some unlawful act, or in using the weapon in an unlawful manner, if the act of firing the weapon was unintentional, or if there was no intention to shoot and wound. See Thacker v. Com., 263 Ky. 97, 91 S. W. (2d) 998, in which the writer has collated more than 50 Kentucky cases.

We have such a case here. Appellant admitted that just before the encounter with Whittaker, he had struck Sanders on the head with the .44 caliber pistol, and it had discharged. A moment prior to the shooting of Whittaker, he had struck Whittaker on the head, and again the pistol discharged, and, strange to say, when Whittaker regained his feet and began the struggle to gain the pistol, it was again discharged. The last shot did not occur until Kirkland came up and made an attempt to wrest the pistol from appellant, and after he had told him he was under arrest. While some of the witnesses say that both Whittaker and Kirkland had hold of one end of the pistol, and appellant the other, appellant insists that Kirkland had hold of the muzzle, and he, appellant, had hold of the stock or butt, at the time of the shot which wounded Whittaker.

In the case of Tincher v. Com., 253 Ky. 623, 69 S. W. (2d) 750, 753, wherein it was shown that appellant had been with others engaged in the robbery of a bank, and a pistol which appellant had was fired, causing the death of an employee of the bank, and appellant insisted that he had not intended to shoot, and did not know how the pistol was caused to be discharged, and complained of lack of accident instruction, we said:

"The administration of the criminal law has not yet reached the stage where it is the duty of the court to give an instruction based upon facts for which there is no testimony to sustain, and which have no foundation other than an unsupported surmise."

On the other hand, a survey of many cases, which we have reviewed, involving the defense of purely accidental shooting, will show that we have not failed to reverse if the court, after a showing that the shooting or killing was in fact accidental, failed to extend the defense to the accused by a proper instruction.

The court below no doubt carefully observed and analyzed the testimony of appellant and his witnesses,

and concluded properly, as we conclude, that the facts as detailed did not authorize the giving of any instruction on this phase of the case, other than was embodied in the one with relation to the right of accused, if the shooting was unintentional and occurred in the doing of an unlawful act. Appellant's testimony, and this is the only evidence by which he undertook to explain the occurrence, is far from such as would authorize the giving of the instruction which he now claims he should have had. It is true in answer to a leading question he said he did not fire the weapon. In reply to this question, "Did you fire that gun?" he answered, "I don't think I did."

And further, "Did you pull the trigger? A. No sir.

"Q. Now can you fire that gun without pulling the trigger? A. Yes sir.

"How is that done? A. Pulling the hammer back.

"Q. It was fired that way—Tell how that gun was fired? A. I am pretty sure that was the way when Kirkland grabbed hold of it.

"Q. Did you shoot any more or try to shoot any more? A. No Sir.

"Q. Was your hand next to the trigger of the gun? A. Yes Sir."

If his hand was next to the trigger it follows that the same hand was next to the hammer. Appellant also says that Kirkland had hold of the "top" of the gun and shoved it down, and about that time the gun went off.

Upon this evidence counsel insists that there should have been given an instruction that would have authorized the jury to find appellant not guilty, if it should appear to them that the shooting was accidentally done in a "scuffle" over possession of a pistol. The facts do not authorize any such instruction.

As said, the court instructed the jury on the felonious offense of shooting with intent to kill, etc.; the offense of shooting in sudden passion or affray, and the lesser misdemeanor, unintentional shooting by the reckless use of fire-arms. It appears that by instruction No. 3, immediately following the two instructions relating to the felony (No. 1) and to shooting in sudden heat (No. 2), the court instructed the jury that if they

entertained reasonable doubt as to defendant's having been proven guilty under No. 1, the felony, or No. 2, the shooting in affray, they should find defendant guilty of the lesser offense, "that of shooting and wounding in sudden affray, and fix his punishment accordingly."

It thus appears that the jury were not in so many words told that if they believed accused guilty of shooting and wounding by the reckless handling of a pistol, they should find him guilty of that, the still lesser offense, and so fix his punishment at the small fine or short imprisonment, or both. Of this omission counsel complains.

The jury found the defendant guilty of the felonious act, as described in the first instruction. There is only one conclusion, and that is that the jury believed, and the facts warranted that belief, that the shooting was felonious, with intent to kill. Had the facts not justified that conclusion by the jury, the instant complaint might draw consideration. But reviewing closely the facts adduced and the instructions given upon those facts, and admitting, for the sake of discussion only, that it would have been better for the court to have embodied in the doubt instruction the second lesser offense, we are of the opinion that the court's failure to include such instruction did not operate to the prejudice of appellant's substantial rights. We conclude, as we are authorized to do, (section 353, Criminal Code of Practice, and cases cited), that there was neither in this particular, nor in others of which complaint is made, any prejudicial error.

Judgment affirmed.