## Fore v. Commonwealth.

June 2, 1942.

Hiram H. Owens for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Robert Ott Fore has been convicted of the crime of manslaughter and his punishment fixed at imprisonment for a term of 21 years. He shot and killed W. E. Dority on the night of September 19, 1941.

Appellant and Dority lived in Knox county near the corporate limits of the city of Corbin and were neighbors, but apparently were not acquainted. Dority had lived in the neighborhood only two weeks before his death. He was employed as a coal miner at Louellen in Harlan county and worked there during the week, returning to his home near Corbin for the week ends. Some of his fellow employees lived at Corbin, and they also boarded at Louellen while at work and returned to their homes at the end of the week. These employees traveled between Corbin and Louellen, a distance of 96 miles, in automobiles. On September 19, 1941, Dority left the mine in Harlan county at 5:25 p. m. in an automobile owned and driven by A. J. Lawson, a fellow workman, and arrived at Corbin about 8:30 p. m. Three other miners who lived in or near Corbin were passengers in the car. Dority's home was located about one-fourth of a mile from the highway. As they approached Corbin, Dority asked Lawson to let him out at the schoolhouse, the point on the highway nearest to his home, but they had then passed the schoolhouse and Lawson offered to turn around and drive him to his home but Dority insisted on getting out, saying he could walk to his home from that point. To reach his home it was necessary

for him to pass near the home of appellant, which was located in what is known as Wentworth addition. Ada Green, who lives in Wentworth addition diagonally across the street from appellant's home, heard the car stop on the highway and heard the door slam. Shortly thereafter she heard the sound of voices, then a shot was fired, and a voice, which she recognized as appellant's, said: "You go that way and I will get the doctor." She heard the other person say: "Help. I am shot and going to die." Mrs. Pearl Stewart, who lives about 100 yards from appellant's home, testified that appellant appeared at her home about 8:30 p. m., and said he had shot a man who was trying to break into his home and he wanted help to take the man to the hospital. Edgar Willis, another neighbor, testified that appellant came to his home and asked him to get a doctor, that he, appellant, had shot a man who was attempting to break into his home. Willis dressed and went to the place pointed out by appellant, where he found Dority sitting on a guardrail on the main highway about 125 feet from appellant's home. A bullet from a 22-caliber rifle had entered his chest and passed through his body. He was taken in an automobile to a hospital in Corbin where he died about 20 minutes after his arrival. Before his death he was asked if he knew who shot him, and he said: "I don't know. I was feeling my way home and I got shot." The proof showed that the deceased was totally deaf in one ear and partially deaf in the other. The foregoing was, in substance, the evidence for the Commonwealth. The appellant testified that he was sitting in his home reading by an oil lamp and listening to his radio when he heard a noise. He got his rifle and walked around the house, but saw no one. He turned out the light and went to bed and shortly thereafter heard someone at the window. He got his rifle and went to the door and saw a man leaving the window. Appellant followed him, called to him to stop, and asked him: "What are you doing at my house?" When they reached the center of the adjoining lot the man picked up a rock, turned, and started toward appellant. The latter ordered him to stop and when he continued to advance appellant shot him.

Two errors are assigned for reversal of the judgment: (1) Error of the court in requiring the jury to remain in the courtroom during a meeting at which several addresses were made by local attorneys and citizens; and (2) erroneous instructions.

At 11:55 a. m. on the day of the trial, after the Commonwealth had presented most of its evidence, court was adjourned until 1 p. m. The presiding judge made the following statement to the jury:

"You will be in charge of the sheriff and you will remain in the courtroom; everybody in the courthouse is invited to stay in the courtroom and have lunch."

After lunch was served, a program was presented by a local organization styled, "League for Justice." There was an invocation and a benediction by local ministers, several patriotic and religious songs were sung, Lincoln's Gettysburg Address was read, and several speeches were made. The subjects of these were: "Why a League for Justice," "The Church and Good Citizenship," "Weighing the Evidence," and "Democracy Today." Counsel for defendant objected to the jury being kept in the courtroom during the meeting, and moved the court that the speeches be taken down in shorthand and transcribed and that all the proceedings which transpired in the presence of the jury be recorded. After the motion was overruled counsel for defendant left and returned to the courtroom just before the meeting closed. After his return he heard one of the speakers say:

"Never before has there been such drunkenness and prostitution in the United States as now; one murder every 45 minutes is being committed; in the year of —— the bill of the country for crime was 13 billions of dollars."

If counsel's surmises as to what transpired during his absence from the courtroom are correct, the proceedings had in the presence of the jury were highly prejudicial to appellant. However, we have concluded that the judgment must be reversed because of an erroneous instruction, and it is therefore unnecessary to consider the first ground assigned as an error since it is improbable that such a proceeding will be had at another trial.

The court gave instructions on murder, manslaughter, and self-defense. In instruction No. 2 the court told the jury that although they might believe from the evidence that the deceased, Dority, had been at the house of the defendant, yet if they further believed from the evidence that he had departed therefrom and that the

shooting was at another place, such shooting and killing by the defendant could not be justified merely because the deceased had attempted to break into defendant's home in the nighttime or because he came upon defendant's premises, and they could not excuse defendant, Fore, upon that ground. The instruction also told the jury that the defendant could not justify the shooting on the ground of self-defense if they believed from the evidence that he pursued the deceased and provoked or brought about the difficulty. Instruction No. 2 was in the nature of a qualification of an instruction on the right to defend one's habitation. An instruction on defendant's right to defend his home was not given and none was authorized.

> "The right to act in defense of one's home is confined to cases of attempted forcible entry for the purpose of committing a felony or of inflicting great bodily harm or offering personal violence to a person dwelling or being therein, and to cases of attack or attempted attack on the home with firearms for any one of such purposes. Hendrickson v. Commonwealth, 232 Ky. 691, 24 S. W. (2d) 564. It has never been applied where the person wounded or killed was off the premises, and was not then engaged in any kind of attack on the home." Hamilton v. Howard, 234 Ky. 321, 28 S. W. (2d) 7, 10; Engle v. Commonwealth, 258 Ky. 118, 79 S. W. (2d) 417; Thomas v. Commonwealth, 195 Ky. 623, 243 S. W. 1.

Such a defense was not made by the defendant. His only defense was that he shot the deceased in self-defense after the latter had left appellant's home. Instruction No. 2 stressed the notion that appellant was without right to follow a trespasser on his premises or to notify him to depart. While a mere trespass on the premises of another will not justify the owner of the premises in shooting the trespasser unless the trespass be accompanied by acts that amount to an assault upon the person of the owner such as would warrant him in exercising the right of self-defense to protect his person, yet the owner has the right to investigate and inquire as to the purpose of the trespass and to warn the offender to desist. Cox v. Cooke, 1 J. J. Marsh. 360; Stacey v. Commonwealth, 189 Ky. 402, 225 S. W. 37, 25 A. L. R. 490; Johnson v. Commonwealth, 279 Ky. 753, 132 S. W. (2d) 72. We think the other instructions covered the issues

in the case fully, and that instruction No. 2 should have been omitted.

Judgment is reversed, and the cause remanded, with directions to grant appellant a new trial, and for further proceedings consistent herewith.