## Wolford v. Commonwealth.

March 16, 1945.

582

Sidney Trivette for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Jamboree, in Pike County, is the scene of this homicide. A horse trade was the origin of it and whiskey the precipitating cause. On Sunday afternoon, March 5, 1944, Isaiah Wolford, his brother-in-law, Perry McCoy, and his brother, Caudle McCoy, gathered at a "jockey ground" on a creek. When Isaiah, nicknamed Bud, first rode up, he said: "Caudle, if you would shave a few of them whiskers off, me and you might try to trade some now." He asked, "Don't you believe I would?" Caudle replied: "I don't know, you might do it." This was apparently all in fun; but when a man is drunk appearances are sometimes deceptive and conceal a hidden motive. Caudle testified: "Isaiah bantered me for a trade and I asked him $15 to boot, and he said 'Let's go to the house and I will get it for you.'" The three men went to the defendant's house about a quarter of a mile away. According to Caudle, Isaiah came out of his house with $15 and a pistol. Perry, sitting on a pony, said that he would have to have $25 to boot. Isaiah took hold of the bridle and said: "No, get off, I ain't going to give you that." He added: "You fellows have been meddling in my business all day." To Caudle he said: "Didn't I believe he would shoot my whiskers off? and I said 'I know you would.'" Isaiah's wife took hold of his coat sleeve to lead him away. Then he shot Caudle off his horse and ran him around "two or three trips and me begging to him." He then shot Perry in the stomach while he was still on the pony and he died about three hours later. Neither of the McCoys was armed. That is the evidence for the Commonwealth upon which Isaiah was convicted of manslaughter and sentenced to five years' imprisonment.

The defendant's story is that he had finally agreed with the McCoys to give them $15 to boot in the trade. His little boy got on the pony and all of them went to

his house to get the money. When he came out with it Perry McCoy was on the pony. He declined to take $15 and insisted upon $25. When he, the defendant, refused to give that much, Perry said he was going to have it, got off the pony with a knife in his hand and came towards him. Isaiah went into the house and got his pistol and came back with it in his hand and told Perry he did not have $25. He further testified:

"Caudle said, 'You are a God damn liar, I seen you take in twenty-five down there today.' I said, 'You are on your pony, Perry, now go on off,' and he come on up toward me with his knife and I told him to stop and go on off, that I didn't want no trouble with them and he started on closer to me, in about two and a half feet, and I shot over his head. He made a lunge at me, and when he done that I lowered the gun and shot, and Caudle jumped his horse toward me and jumped off with a knife and Perry walked down around the house; I didn't know where he was going; and Caudle said, 'don't shoot no more, I'll go,' and I said, 'Brother, you should have went before you started this.' After he got on his horse, his hat was laying there and a one dollar bill and Monroe Collins told Elias Dotson about it and Elias got it and give it to him and he rode about ten or fifteen feet and pulled his hat off and throwed it down."

The defendant testified that he had fired at Perry's head "to see if he could excite him and keep him from coming on up toward me." Instead of stopping, he "made a lunge toward me and I lowered the gun and fired." He shot him to keep "from getting cut up or killed," and because he believed he was in danger of losing his life and that it was necessary. He knew Perry's reputation to be that of a dangerous man when drinking. After he had shot Perry he also shot Caudle, who had jumped off his horse, with a knife, and was coming on to him.

The defendant's wife, hearing the argument outside, went to the door. She testified that he insisted with McCoy that he did not want any trouble; that his baby was sick, and told them to go on off, but they remained and kept cursing him. She corroborated her husband as to the attack made upon him by the other men. The defendant is also substantially corroborated by three witnesses. Elias Dotson was out looking for

some cane seed and happened to go to the jockey ground in search in time to hear the horse swapping between these parties. He followed them to Isaiah's home, but when the cursing and argument started he acted under the dictum that discretion is the better part of valor and went back of the house where he could hear and see nothing. The testimony of two others, presented through the medium of an affidavit of the defendant in support of his motion· for a continuance, is that shortly before the killing they had told him they had heard Perry McCoy "threaten to take his life and hew Isaiah Wolford down."

This full recitation of the evidence, we think, demonstrates the absence of merit in the appellant's contention that the verdict is flagrantly against the evidence, which, under the prevailing rule, is the equivalent of saying that the evidence was not sufficient to submit the question of his guilt of murder or any of the degrees thereof to the jury. It is true that only Caudle McCoy, an interested witness, gave the testimony upon which the conviction rests and that a number of witnesses sustained the defendant's side of the case. But it was the province of the jury to accept partially McCoy's evidence in connection with the rather unnatural story of the defendant and the other witnesses, since the three participants were drunk. The jury believed the truth of the matter lay between the unmitigated murder described by Caudle McCoy and the clear self-defense described by the defendant.

Nor can we sustain the argument that the court committed a prejudicial error by failing to give an instruction on the right of the accused to defend his home and family. Such an instruction is not authorized where the hostile demonstration of the deceased was made only against the person of the defendant, or where self-defense alone is claimed as an excuse or justification for the killing. This is all the defendant claimed. Duff v. Commonwealth, 250 Ky. 555, 63 S. W. 2d 593; Engle v. Commonwealth, 258 Ky. 118, 79 S. W. 2d 417; Bailey v. Commonwealth, 288 Ky. 613, 157 S. W. 2d 100; Fore v. Commonwealth, 291 Ky. 34, 163 S. W. 2d 48.

The judgment is affirmed.