## King v. Commonwealth.

(Decided April 17, 1934.)

A. F. BYRD and R. A. DUNN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

Raymond King appeals from a judgment convicting him of voluntary manslaughter and fixing his punish-

ment at sixteen years' confinement in the penitentiary. It was charged in the indictment that he killed J. C. Lindon by carelessly, negligently, and wantonly driving an automobile upon and over Lindon.

The tragedy occurred shortly after noon on September 12, 1933, near the intersection of Main and Washington streets in Campton, the county seat of Wolfe county. Appellant was nineteen years of age at the time and was a resident of Breathitt county. He was operating an automobile owned by Calvin Williams who was in the automobile at the time as was also Elihu Wages. All of the occupants of the automobile were residents of Breathitt county. Appellant had never driven an automobile and on the way to Campton had requested Williams to permit him to drive the car. Williams allowed him to take the wheel and sat with him on the front seat. Wages was on the rear seat. J. C. Lindon and Judge G. T. Center, two prominent citizens of Wolfe county were standing on the west side of Washington street near the ditch line about 15 or 20 feet north of Main street and were facing west. They were standing immediately in front of a parked automobile engaged in conversation. Appellant drove the automobile down Main street and turned into Washington street. According to a number of eyewitnesses who testified for the commonwealth, it was traveling at a high rate of speed, the various witnesses fixing the rate of speed at from 25 to 40 miles an hour. The automobile struck both Lindon and Judge Center. Judge Center was knocked about 15 feet and was rendered unconscious. Mr. Lindon was caught between the radiator of the automobile driven by appellant and the parked automobile near which he was standing and was killed almost instantly. The parked automobile, when it was struck, was driven back about 6 or 7 feet. The automobile driven by appellant rebounded or was thrown into reverse and stopped about 15 feet from where Lindon was struck. It was Saturday afternoon and a great many people were on the streets. Appellant, Williams, and Wages left the automobile but all of them were arrested before they left Campton. An empty pint bottle which had contained liquor was found in the car and a pint bottle containing a small amount of whisky was found on Wages' person when he was arrested.

Appellant testified that he had never driven an automobile before and he admits that he took three drinks

of whisky after he left Breathitt county and before he reached Campton. After he began driving the car, Williams sat at his side instructing him how to operate it and assisting him in steering it. When he turned into Washington street, he was traveling at a rate of speed not exceeding 15 miles an hour and, seeing that he was about to strike Lindon and Judge Center, he attempted to steer the automobile to their left and onto a vacant lot, whereupon Williams grabbed the steering wheel and turned it to the right, causing the automobile to strike Lindon and Judge Center. He stated, of course, that he did not intend to injure any one.

He first urges as a ground for reversal that the verdict is flagrantly against the evidence, but this contention cannot be sustained. It is well settled that if one operates an automobile upon the highway in such a manner as is likely to injure others using the highway and recklessly, wantonly, and with gross carelessness strikes and kills another, he is guilty of voluntary manslaughter. Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164. This principle is based upon the theory that a man intends the natural consequences of his act and that he is aware or ought to be aware of what will result from the reckless or grossly careless operation of an automobile, which becomes a dangerous instrumentality under such circumstances, although he actually has no intention to kill.

The evidence for the commonwealth tended to show that the appellant was driving at a very rapid rate of speed when he made the turn from Main street into Washington street when many people were on the street and that at the time he was probably under the influence of intoxicating liquor. It presented a case of gross negligence and it cannot be said that the verdict finding appellant guilty of voluntary manslaughter is flagrantly against the evidence.

It is also urged that the verdict is excessive and palpably the result of passion and prejudice on the part of the jury. In Colvin v. Commonwealth, 247 Ky. 480, 57 S. W. (2d) 487, 489, where the facts were very similar to the facts in the instant case, it was said:

"Five years' imprisonment in the penitentiary seems to us to be a severe penalty under the circumstances. There was no intentional doing of a wrdng, nor actual malice such as springs from an

evil heart, but only an implied malice arising from reckless driving. Doubtless this young man [who was not quite twenty-one years old] suffers much anguish in the recollection of his tragic carelessness. Remorse is often the most severe punishment for a crime. But this court is not authorized in a criminal case to modify the judgment or to reverse it because it seems excessive, for the verdict was within the limits provided by the statute for such crimes.''

While the penalty here appears to be extremely severe under the facts, we do not pass on the question since we have concluded the judgment must be reversed on another ground.

Complaint is made of a few rulings of the trial court sustaining objections to certain questions, but no avowals were made as to what the witnesses would say. It appears from the bill of exceptions that during the argument of the case one of the attorneys for the commonwealth in his closing argument used the following language:

''The defendants are outlaws and murderers and the jury are not the right kind of men and were not good citizens of Wolfe County unless they imposed the highest penalty on the defendants.''

It is contended that this argument was prejudicially erroneous and we have concluded that under the circumstances this contention is sound. Much latitude is allowed an attorney in the argument of his case and he has the right to present to the jury the facts as testified to by the witnesses and to deduce therefrom all conclusions legitimately to be drawn from the testimony, but we have repeatedly condemned arguments in which attorneys for the commonwealth have indulged in villification and abuse of the defendant and where they have stated to the jury that its members will be subjected to scorn or contempt if they fail to return the verdict sought by the attorney. East v. Commonwealth, 249 Ky. 46, 60 S. W. (2d) 137; Goff v. Commonwealth, 241 Ky. 428, 44 S. W. (2d) 306; Mount v. Commonwealth, 120 Ky. 398, 86 S. W. 707, 27 Ky. Law Rep. 788.

Though the conduct of appellant and his companions on the occasion in question may have been highly reprehensible, there was no evidence warranting the

charge that they were murderers and outlaws, nor was it proper for the attorney for the commonwealth to intimate that any verdict but one inflicting the severest penalty would brand the members of the jury as undesirable citizens of Wolfe county. Appellant and his companions were strangers in Wolfe county, while the victims of his unlawful act were prominent citizens of that county. The homicide occurred on September 12, 1933; the indictment was returned on September 19, 1933; and the trial was commenced on the same day the indictment was returned. The feeling in the community toward the appellant was no doubt extremely unfriendly and in the circumstances it cannot be said the improper argument of the attorney for the commonwealth did not have some effect on the verdict.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.