### Jackson v. Commonwealth.

Feb. 8, 1946.

Victor A. Jordan for appellant.

Eldon S. Dummit, Attorney General, H. K. Spear, Assistant Attorney General, J. C. Bird, Commonwealth Attorney, and Guy L. Dickinson for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Martha Jackson was convicted of malicious shooting and wounding Bettie Jackson with intent to kill, and her punishment was fixed at confinement in the penitentiary for ten years. Five grounds are relied upon for a reversal of the judgment: (1) A six year old witness was not qualified to testify; (2) erroneous instructions; (3) improper argument; (4) admitting incompetent evidence and excluding competent evidence; and (5)

the verdict is flagrantly against the evidence. We find it more convenient in writing the opinion not to take up the alleged errors in the order named.

Martha and Bettie had married brothers and lived within 80 yards of each other in a rural section of Knox County. The shooting occurred on Friday morning, September 8, 1944, between 9 and 10 o'clock. The only previous difficulty between the women was on the Wednesday before, when Bettie came to Martha's home armed with a pistol and used threatening language, so Martha testified, but which Bettie denied.

There is great contrariety as to how and where the shooting occurred. According to the testimony of Bettie and her six year old son, Franklin, she was on the road bringing home some firewood in her arms, and the little boy was carrying an axe. When she reached a point on the road opposite Martha's house, the latter complained to Bettie of her hogs being in appellant's garden. Bettie then took the axe from the child to remove some rails from the fence to get her hogs out of Martha's garden, when the latter without a word fired a shotgun from the porch of her home at Bettie while she was still in the road. The charge struck Bettie in the head and face, causing the loss of an eye.

Martha's testimony was to the effect that Bettie entered her yard with an axe in her hand with the threat, "I'll cut your guts out," and after commanding her several times not to come on her with an axe, Martha reached in a room, obtained the gun and shot Bettie. Bonnie Sizemore, a sister of Bettie and sister-in-law of Martha, who was in company with Bettie and Franklin, corroborated Martha. Bonnie further testified that Bettie had said while gathering wood she would use the hogs being in Martha's garden as an excuse to kill her. Blood was found in the road and several other physical facts and circumstances tend to corroborate the Commonwealth's evidence that Bettie was in the road and not in Martha's yard at the time she was shot.

The evidence is conflicting, and in such instances the law imposes the duty of finding the true facts upon the jury, who must determine the credibility of the witnesses and the weight to be given their testimony. It cannot be said that a verdict is flagrantly against the

evidence when it is reasonable for the jury to decide from the facts that the accused has perpetrated the crime charged. Mills v. Commonwealth, 299 Ky. 430, 185 S. W. 2d 689. In this instance the evidence was amply sufficient to take the case to the jury and to sustain the verdict.

Complaint is made that the court refused to permit appellant to prove that the prosecutrix came to her home armed on Wednesday preceding the shooting on Friday and made threats against her. The trial judge admonished counsel on both sides not to go into details of this previous difficulty but he permitted appellant to prove that Bettie was at appellant's home with a pistol and threatened her, which Bettie denied while on the witness stand. So there can be no just criticism of the trial court on this score.

But it is vigorously argued that the six year old son of Bettie was too young to qualify as a witness and that the objection to his testimony and the motion to exclude should have been sustained. There is no unalterable rule measuring the competency of a witness because of his age, and the court should make inquiry into the child's qualifications and determine whether he is sufficiently intelligent to observe, recollect and narrate the facts, and has a sense of obligation to speak the truth. If so, then the child should be allowed to testify, and it is for the jury to determine what weight to give his testimony, once the court rules he is a competent witness. See Davenport v. Com., 285 Ky. 628, 148 S. W. 2d 1054, 1063, and the cases therein cited. Our latest utterance on the subject may be found in Thomas v. Com., 300 Ky. 480, 189 S. W. 2d 686.

While the trial judge did not go into the child's qualifications as a witness, employed counsel representing the Commonwealth did and the little boy, Franklin, qualified himself as being competent to testify. We have read with great care the answers Franklin made to the questions asked him, and they show he possesses more than ordinary intelligence for a six year old boy and that he had the capacity to observe what occurred on the day of the shooting and to remember it and to accurately relate on the witness stand what he had heard and seen; also, he appeared to understand his moral obligation to speak the truth. The court did not err in holding that this child qualified as a competent witness.

Much criticism is directed at the instructions, but as we have concluded that the judgment must be reversed because of improper argument, it is unnecessary to discuss the instructions other than to say on another trial the court should follow Stanley's Instruction to Juries, sec. 807, page 1068, or some other form of instructions we have approved in this character of case.

Counsel employed to assist in the prosecution, in the course of his argument, said:

"Ladies and Gentlemen of the jury, you are being watched by the men and women of this county so they can tell by your verdict your character and the kind of men and women you are in the county."

Proper objection to this argument was made and was preserved in the motion for a new trial and in the bill of exceptions. It cannot be doubted that such an argument was improper since it was capable of imparting an implication that a verdict of acquittal would not meet with public approbation.

While a wide latitude is permitted counsel in argument, and he may present to the jury not only the facts brought out in the evidence, but may deduce therefrom all legitimate conclusions, yet it is never proper for an attorney representing the Commonwealth to make a remark in his argument which tends to cajole or to coerce a jury to reach a verdict which would meet with the public favor. 23 C. J. S., Criminal Law, sec. 1107, page 585; Goff v. Com., 241 Ky. 428, 44 S. W. 2d 306; Wallace v. Com., 229 Ky. 776, 18 S. W. 2d 290, 302; King v. Com., 253 Ky. 775, 70 S. W. 2d 667.

There is a clear statement of the rule applicable to improper argument in Music v Com., 186 Ky. 45, 216 S. W. 116, 121, which was reiterated soon thereafter in Johnson v. Com., 188 Ky. 391, 222 S. W. 106, 111, and it is: "But if the complained of remarks are entirely foreign to anything appearing in the case, and if they are made for the purpose of taking an undue advantage, and such was their probable effect, it is the duty of the court to reverse the judgment rendered upon a verdict so obtained."

There is no material difference in the arguments in Goff v. Com., 241 Ky. 428, 44 S. W. 2d 306, and King v. Com., 253 Ky. 775, 70 S. W. 2d 667, for which the court

reversed those judgments, and the one made in the case at bar. The difference is only one of degree. What was said in the instant case is just a little more subtle and not quite so vulgar as the arguments made in the Goff and King cases. There, as here, the improper arguments were made for the purpose of taking undue advantage and of coercing the jury into returning verdicts of guilty.

Appellant was tried in Knox County, and it has been intimated to this court that there had been formed in that county an organization styled "League for Justice," which held meetings in the circuit court room between jury trials whereat talks were made on subjects inclined to inflame jurors so as to make it difficult for any person charged with crime to secure a fair and impartial trial, Fore v. Com., 291 Ky. 34, 163 S. W. 2d 48. The improper argument of which appellant complains could not have fallen on better-tilled or more fertile soil than in the circuit court room of Knox County, wherein the "League for Justice" holds its meetings. Especially is this true when the trial judge overruled appellant's objection and thereby put his stamp of approval on such an argument.

Attorneys representing the Commonwealth in criminal prosecutions should remember what Judge Pryor wrote in O'Brian v. Com., 9 Bush 333, 345, 72 Ky. 333, 345, 15 Am. Rep. 715:

"The Commonwealth is not in pursuit of victims, but desires to inflict punishment only in a legal and constitutional way upon the guilty."

They might also remember that to use unfair methods to obtain a conviction not only brings the law and the courts into disrepute and is dangerous to our system of government, but it is disgusting to citizens who look upon courts and judges as symbols of justice. Some men like to excuse such unlawful practices by regarding themselves as those who unflinchingly enforce the criminal laws and send the guilty to punishment. But they forget that the world's greatest crime, the crucifixion of Christ, was by zealots and was perpetrated in the name of law enforcement.

The judgment is reversed for proceedings consistent herewith.