Jack Joe HOLLAND, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

and

Larry JAMES, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

Dec. 19, 1985.

Rehearing Denied Feb. 27, 1986.

Paul Isaacs, Public Advocate, Larry H. Marshall, Rodney McDaniel, Asst. Public Advocates, Frankfort, for Holland.

Paul Isaacs, Public Advocate, Donna Boyce Proctor, Asst. Public Advocate, Frankfort, for James.

Steven L. Beshear, Atty. Gen., David A. Smith, K. Gail Leeco, Asst. Attys. Gen., Frankfort, for appellee.

## OPINION OF THE COURT.

The appellants, Jack Joe Holland and Larry James, were convicted of first-degree robbery and the murder of Barbara Helm. They were sentenced to death on the murder charge and to 20 years' imprisonment on the robbery charge. They appeal to this court as a matter of right. We reverse.

On January 20, 1980, Barbara Helm disappeared after punching out from work at the Blue Boar Cafeteria, Louisville, Kentucky. On January 21, the police picked up Appellant Jack Joe Holland, an employee of the Blue Boar for questioning and released him approximately five hours later. On January 24, 1980, Barbara Helm was found dead on a roadside embankment in Oldham County. Holland was questioned again on January 30. He denied any participation in the Blue Boar crimes and explained that he had been with Appellant Larry James at the Do Drop Inn Bar and later at Wendell's Tavern, both Louisville establishments, at the time that the crimes occurred. James was questioned on February 2, and he gave an alibi identical to Holland's.

On May 21, 1981, George Waldridge offered information and assistance in the Blue Boar investigation in exchange for leniency in regard to charges arising from an automobile accident he was involved in that night. Arrangements were made for Waldridge to contact Holland and discuss a fictitious robbery as a ruse for getting Holland to talk about the Blue Boar crimes while being monitored and tape recorded by police.

The first tape recorded contact was a telephone call by Waldridge to Holland on May 28, when Holland agreed to meet Waldridge later that day to talk about the fictitious robbery. This meeting was monitored through a surveillance device installed in Waldridge's vehicle. Police arrested Holland and James later that evening. When questioned by police on June 12, they repeated their alibi.

Holland did not testify at trial. He relied on his alibi and James' testimony and defense witnesses, (whose case was presented before Holland's), that he and James smoked marijuana all that night at the Do Drop Inn. The jury found Holland and James guilty of the robbery and murder of Barbara Helm. Judgment was entered against Holland and James, imposing 20 years' imprisonment for first-degree robbery and the death penalty was imposed for murder.

Holland and James allege numerous errors in their trial, some of which we have found to be meritorious.

Initially, Holland contends that the trial court erred in refusing to instruct the jury that his refusal to testify should not be considered in any way in arriving at a verdict. Shortly after trial the United States Supreme Court, in *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241, (1981), held that the Fifth Amendment requires that upon request a criminal trial judge must give a "no adverse inference" instruction to the jury when a defendant exercises his Fifth and Fourteenth Amendment rights against compulsory self-incrimination. On remand from the Supreme Court, we reversed Carter's conviction and directed that he be given a new trial. *Carter v. Kentucky*, Ky., 620 S.W.2d 320 (1981).

The Commonwealth submits that since *Carter* was decided weeks after Holland was tried, it should not be given retrospective application where the former rule had a longstanding history of continuous judicial approval, citing *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374, (1975). We disagree. In *Mack v. Oklahoma*, 459 U.S. 900, 103 S.Ct. 201, 74 L.Ed.2d 161 (1982), the Supreme Court of the United States remanded a case similar to this one, in which the petitioner's direct appeal to the Oklahoma Court of Criminal Appeals was pending when the United States Supreme Court announced its decision in *Carter*. The Oklahoma Court of Criminal Appeals determined that *Carter* was not to be given retroactive effect. The Supreme Court vacated the judgment and remanded the case for further consideration in light of its decision in *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). In *Johnson* it was held that a decision of the Supreme Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered. The Supreme Court's remand of *Mack* to be reconsidered in light of *Johnson* makes it apparent that the Court intended *Carter* to be applied retroactively to a defendant whose appeal was pending at the time it was announced. Such is the case here. As *Carter* applied retroactively to the defendant in that case, so does it apply to Holland in this case.

Both Holland and James assign error to the trial court's admission into evidence, over their objection, surveillance tapes of conversations Holland had with Waldridge, since the tapes were irrelevant and inflammatory. We agree. The Commonwealth contends that the tapes reveal thirty-one direct references by Holland to his involvement in the Blue Boar crimes. We have listened to the tapes and have thoroughly examined the transcripts thereof and have concluded that they have little probative value, and served only to put before the jury evidence of other crimes for which Holland and James were not being tried and to portray their criminal propensity. It is the established rule of this Commonwealth that such evidence does not tend to establish the commission of the crime charged but tends instead to only arouse the passions of the jury, with the resulting prejudice often outweighing its probative value. *O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153, 156 (1982). Holland and James were entitled to be tried for the crimes charged in the indictment and no others. *Pankey v. Commonwealth*, Ky., 485 S.W.2d 513, 526 (1972). With proper editing, certain isolated references during the taped conversation, which may tend to show knowledge by Holland of certain unpublicized facts surrounding the crime, may be admissible.

Additionally, in certain portions of the tapes Holland stated that he passed and Larry James failed polygraph tests. This court has held polygraph evidence to be inadmissible because it is neither scientific nor reliable. *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984). Any reference to either Holland passing a polygraph test or James failing a test is therefore inadmissible. In conclusion, the entirety of the tapes is inadmissible except for the previously mentioned specific exceptions as they relate to Holland.

Holland and James' next principal contention of error is that the admission of color photographs of the deceased demonstrating that the body had been subjected to extensive animal mutilation by the time the photographs had been taken was inflammatory and without significant probative value. We agree. It is the general rule that a photograph, otherwise admissible, does not become inadmissible simply because it is gruesome and the crime is heinous. *Brown v. Commonwealth*, Ky., 558 S.W.2d 599 (1977). However, we find this case distinguishable in that the presentation of photographs depicting the animal multilation of the corpse goes far beyond demonstrating proof of a contested relevant fact. *Poe v. Commonwealth*, Ky., 301 S.W.2d 900 (1957). Proof of identity,

condition and lividity was amply established by the testimony of witnesses who found the body and the pathologist. The photographs do not elaborate on the nature of the victim's injuries but serve to arouse passion at the sight of extensive animal mutilation. *Poe, supra.*

■ Next, James complains that the trial court erred in permitting introduction of an indictment pending against the defense witness Wakefield as evidence of motive and bias in testifying. While normally this is permissible as against a prosecution witness, we can think of no way it demonstrates motive and bias as to this defense witness and should not be repeated upon retrial.

James also complains that he was improperly impeached with prior felony convictions according to rules set out in *Cotton v. Commonwealth*, Ky., 454 S.W.2d 698 (1970). We need not discuss this at length because *Commonwealth v. Richardson*, Ky., 674 S.W.2d 515 (1984), will control impeachment by prior felony convictions upon a retrial of this case.

■ Holland and James argue that the prosecution made deliberate and undue reference to their failure to make a statement upon questioning after they were given their "Miranda rights." We agree. See *Romans v. Commonwealth*, Ky., 547 S.W. 2d 128, 130 (1977).

■ Lastly, Holland and James complain that the trial court erred when it advised the jury that the court "can change" the punishment that the jury may impose upon Appellants and that the Commonwealth repeatedly reiterated this to the jury. We agree. The United States Supreme Court recently held in the case of *Caldwell v. Miss.*, 472 U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), that it is reversible error "to minimize the jury's sense of responsibility for determining the appropriateness of death." See also *Ward v. Commonwealth*, Ky., 695 S.W.2d 404, 407 (1985).

We have examined Holland and James' numerous other arguments and have determined that they are either moot or without merit.

The judgments of the Oldham Circuit Court are reversed.

STEPHENS, C.J., and AKER, GANT, LEIBSON, STEPHENSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents and files a dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I most respectfully dissent because I believe the errors noted by the majority did not result in an unfair trial for the accused. The law does not require that a defendant receive a textbook perfect trial, but only a fair trial. See *Michigan v. Tucker* 417 U.S. 433 at 446, 94 S.Ct. 2357 at 2364, 41 L. Ed.2d 182 (1974).

A careful reading of the extensive record indicates that no essential unfairness occurred.

Considering the quality and sufficiency of the evidence presented to the jury, I do not believe the trial errors were significant enough to require reversal.

References to the post-arrest silence of James and Holland were not reversible errors. The defendants were questioned a total of six times each. After receiving the *Miranda* warning, James gave the police an alibi on February 2, 1980. He repeated the alibi on February 5, remained silent on February 7, May 28 and June 11. He repeated the alibi on June 12.

Holland gave police the same alibi on January 21, 30 and February 6. He remained silent on May 28 but repeated the alibi on June 11 and 12.

Holland, following his arrest on May 28, gave statements to the police on June 11 and 12 in which he repeated the alibi he had given on January 21, 30 and February 6.

Considering that both defendants claimed the right to silence both before and after the arrest, I do not believe evidence of silence at the arrest scene was prejudicial.

The 3-color photographs of the victim were properly introduced into evidence. Two of the photos showed the victim as she was found at the murder scene and the third picture is a back-side morgue picture. They are relevant and admissible for the purpose presented. They were not unduly prejudicial because of the animal mutilation. Whether they were gruesome is of no consequence because they portray the body in the condition that it was found. Considering that there was expert testimony describing the effect of the shotgun blast to the face of the victim, the photos might be considered less gruesome.

The references to the jury sentence as a recommendation were not accompanied by any message that the responsibility of the jury was lessened. The jury was told that its verdict was a recommendation but there was inference that its responsibilities were lessened thereby. Any false impression on that score was corrected by defense counsel at trial.

I would affirm the conviction.