**Robert WAGER, Appellant,**

v.

**COMMONWEALTH of
Kentucky, Appellee.**

**No. 87–SC–403–MR.**

Supreme Court of Kentucky.

May 19, 1988.

JoAnne M. Yanish, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Carol C. Ullerich, Asst. Atty. Gen., Frankfort, James C. Ladd, Commonwealth Atty., Munfordville, for appellee.

STEPHENS, Chief Justice.

Appellant was convicted in Hart Circuit Court of first-degree rape, second-degree assault, and first-degree burglary as well

as being a persistent felony offender. He was sentenced to two life sentences and a twenty-year sentence, all to be served concurrently. Appellant sets forth the following allegations of error to be reviewed in his appeal as a matter of right.

■ First, appellant maintains the trial court incorrectly admitted as rebuttal evidence testimony regarding his confession. While both were inmates at the Hart County Jail, appellant allegedly confessed to fellow inmate Quinn that he had broken into some woman's home, beaten, and raped her. Most important to the prosecution's case, since a peculiar injury to the victim was as yet unexplained, appellant told Quinn that he had gnawed on her finger to guarantee her compliance. Quinn reportedly came forward voluntarily when he heard about the crime, and told police what he had learned from the appellant. At trial, Quinn was neither listed as a witness, nor did he testify during the Commonwealth's case-in-chief. It was only after the defense had completed its case that Quinn was brought in as a rebuttal witness to contest the veracity of appellant. Appellant contends that such a surprise is improper. Although the Commonwealth was under no obligation to release to the defense a list of witnesses it expected to call, *Lowe v. Commonwealth*, Ky., 712 S.W.2d 944 (1986), and admission of rebuttal evidence is largely a matter of judicial discretion, RCr 9.42(e), "[t]he Commonwealth should not be permitted to take undue advantage of the defendant and withhold important evidence until near the close of the trial, and then introduce it in the guise of rebuttal evidence." *Gilbert v. Commonwealth*, Ky., 633 S.W.2d 69, 71 (1982). Moreover,

> [A]ny out-of-court statement ... that may reasonably be interpreted as being in the nature of an admission of guilt is admissible in chief as affirmative evidence of guilt, and should not be introduced in rebuttal under the guise of contradicting or impeaching the defendant in his capacity as a witness.

*Id.* The evidence was highly prejudicial and introduced at the point where it would have the most impact. Thus, it was error for the trial court to admit the evidence, and we reverse on this issue.

Second, appellant contends that the testimony of Detective Veluzat regarding the victim's identification of her assailant should not have been admitted. Approximately one and one-half days after the crime, Detective Veluzat visited the victim in the hospital. She was an eighty-seven-year-old woman, and severely injured, but Veluzat testified that she was coherent and able to recognize him, whom she had met earlier. Veluzat testified that the victim identified appellant as the man who had beaten and raped her, because she remembered his coming to her home in the past to sell firewood. The victim was unable to testify on her own behalf because she had already died of causes not linked to the crime before the commencement of trial.

■ The Commonwealth argues that the indicia of reliability are good, and that although in *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985), this Court declined to adopt the residual hearsay rule, the case at bar has far better facts than those of *Bussey*. The Commonwealth contends that the evidence cannot be obtained any other way, because the victim is dead, and there were no eyewitnesses. Nevertheless, we do not intend to add the residual hearsay rule to the many hearsay exceptions already recognized by the Courts of this Commonwealth. As we recently stated in *Estes v. Commonwealth*, Ky., 744 S.W.2d 421, 423 (1988), "we expressly declare that we have *never* adopted [the residual hearsay rule] in Kentucky." The facts did not warrant its adoption in *Estes*, nor do they compel action here. The victim in the case at bar was eighty-seven years old and had been severely traumatized. Her identification of appellant was somewhat confused, and Detective Veluzat testified that he "knew who she was talking about."

It was therefore error for the trial court to admit the testimony of Detective Veluzat regarding the victim's identification of her assailant.

■ Third, appellant claims the trial court should not have admitted into evi-

dence the uncertified documentation of the results of Matthews' blood test. There was much evidence presented by the defense which tended to focus blame upon Matthews, a friend of appellant. Matthews had suspicious injuries, namely scratches on his chest, which apparently were not there before the crime. In order to clear Matthews of any suspicion, he was given a blood test, and the results were not compatible with the blood type of the assailant as determined from his semen. The appellant, however, did match blood types with the assailant. Although the document which contained the results was read into evidence by Matthews, it was merely an unsworn copy. We have held that "hospital records, pertaining either to mental or physical therapy, are admissible into evidence, either on identification of the original by the custodian of the record, or on offer of a certified or sworn copy." *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935, 938–39 (1976). It was error to admit the unsworn copy of Matthews' blood test into evidence, and thus warrants reversal.

■ Fourth, appellant contends it was double jeopardy to convict him of both second-degree assault and first-degree rape. The test for determining whether prosecution for two offenses constitutes double jeopardy comes from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution under the other.

Kentucky has codified this rule in KRS 505.020. Appellant was convicted of second-degree assault and first-degree rape. The elements of those crimes are found in KRS 508.020 and KRS 510.040, respectively.

508.020. Assault in the second degree. —(1) A person is guilty of assault in the second degree when:

(a) He intentionally causes serious physical injury to another person; or

(b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

510.040. Rape in the first degree.—(1) A person is guilty of rape in the first degree when:

(a) He engages in sexual intercourse with another person by forcible compulsion; or

(b) He engages in sexual intercourse with another person who is incapable of consent because he:

1. Is physically helpless; or

2. Is less than twelve (12) years old.

Clearly, neither offense is included in the other. To be convicted of second-degree assault, one must cause physical injury. No such requirement exists for first-degree rape. Similarly, for a first-degree rape conviction, sexual intercourse must be proven. Again, there is no such requirement for second-degree assault. Thus, there is no double jeopardy problem.

■ Fifth, appellant alleges he was prejudiced by prosecutorial misconduct during the closing argument. The Commonwealth's attorney told the jury that he had driven past an old fence on the way to the courthouse, and watched a man pull a post from the ground. As the post had brambles growing on it, one could not avoid being scratched removing the post in this way. This was in reference to Matthews' claim that the suspicious scratches found on his chest were caused by brambles on fence posts and not fingernails. Not only did the Commonwealth's attorney discuss the brambly fence post, but he brought a portion of a bramble-covered fencepost into the courtroom as a demonstration to the jury. Although prosecutors have been consistently granted wide latitude by this court in opening and closing arguments, *Lynem v. Commonwealth*, Ky., 565 S.W. 2d 141 (1978), certain behavior exceeds the bounds of what is acceptable and enters the realm of prejudicial error. The Com-

monwealth's attorney went beyond the evidence presented, and pursued another agenda, quite apart from the legal constraints of the case at hand. Although the Commonwealth claims that the fencepost was merely a reasonable inference drawn from the evidence presented, we do not agree. Bringing a bramble-covered fencepost into court, and telling the jury of the hazards inherent in fencepost-pulling is an impermissible argument with which to close a case.

Sixth, appellant contends that the trial court should not have admitted a Michigan judgment into evidence that was not properly authenticated during the PFO portion of the trial. It is not necessary for us to consider this allegation, as we are reversing on other grounds. Nevertheless, the better practice would be to follow proper authentication procedures when introducing a prior judgment to prove PFO status.

▮ Finally, appellant asserts that a certain photograph of the victim shown to the jury was prejudicially gruesome, and as such constituted reversible error. Whereas photographs must have some probative value to be admitted into evidence, "a photograph, otherwise admissible, does not become inadmissible simply because it is gruesome and the crime is heinous." *Holland v. Commonwealth*, Ky., 703 S.W.2d 876, 879 (1986). The photographs which were prejudicially gruesome in *Holland* depicted extensive animal mutilation of a corpse. The probative value of such a view is very low. Here, all the damage done to the victim was by the appellant. Certainly, the probative value outweighs any potential prejudicial effects.

Therefore, we accordingly reverse and remand for proceedings not inconsistent with this opinion.

LAMBERT and STEPHENSON, JJ., concur.

LEIBSON, J., concurs in a separate opinion in which VANCE, J., joins.

WINTERSHEIMER, J., dissents in a separate opinion in which GANT, J., joins.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion except as to the double jeopardy issue.

The majority states the convictions for second-degree assault and first-degree rape do not constitute double jeopardy because neither offense is included in the other. I disagree.

It is true that forcible rape and assault can be proved by different evidence. However, where, as here, the fact is that the same evidence is used to prove both the assault and the forcible compulsion element of the rape, this constitutes double jeopardy. American Law Institute, *Model Penal Code*, Multiple Offenses, § 1.07.

Further, under KRS 505.020 merger occurs when the same evidence proves both a lesser included offense and an element of the greater offense. *cf. Commonwealth v. Varney*, Ky., 690 S.W.2d 758 (1985). This occurred here. This merger principle should prohibit conviction of both offenses as double jeopardy. The force proving the forcible compulsion element of first-degree rape was the same force causing physical injury to the victim resulting in the assault charge.

Therefore, the force used for conviction of assault merged with the force used to establish forcible compulsion to convict of first-degree rape and Wager was convicted of one offense included in another in violation of the double jeopardy principle.

VANCE, J., joins this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because Wager received a fundamentally fair trial and the basis of the majority decision for reversal is seriously flawed.

Wager was not denied due process because the witness testified in rebuttal only and was not listed as a witness before trial. Quinn testified that Wager told him, while they were both in prison, that he forced his way into the 87–year–old–victim's home intending to rob her and while there he

gnawed on her finger to force her to submit to the rape. This testimony specifically contradicted Wager's previous denials. The trial judge did not abuse his discretion by allowing Quinn to testify in rebuttal. The Wager defense was absolute denial of the rape and assault. The majority's assertion that the evidence was highly prejudicial is unconvincing. Wager did not object to the substance of the testimony but only to the point at which it was introduced. Wager testified in surrebuttal. The practical effect is the same regardless of when Quinn or Wager testified. I do not believe this situation amounts to reversible error. The 87-year-old-victim died prior to trial. About a day and a half after the burglary, rape and assault, she spoke with a detective from her hospital bed. She was coherent and alert. She identified the defendant as having been to her home previously to sell her firewood. She did not know his name.

Only the victim and defendant knew what actually happened. The victim is dead and the defendant has no responsibility to implicate himself. I believe that a sincere search for the truth would surely support the admission of the detective's testimony about the out-of-court identification of her assailant when the victim died prior to trial. I do not believe it was reversible error for the trial judge to admit the statement pursuant to *Maynard v. Commonwealth*, Ky.App., 558 S.W.2d 628 (1977) and the residual hearsay exception. This case was tried on January 26, 1987, prior to any disposition of this Court as to the residual hearsay rule expressed in *Estes v. Commonwealth*, Ky., 744 S.W.2d 421 (1988). *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985) declined to adopt the residual hearsay rule but was not a clear beacon to the trial court of such a categorical position. In my view the majority has substituted its view of the facts for that of the trial court when it announces that the victim's identification was somewhat confused in spite of the fact that the police detective testified that he knew who she was talking about.

The statement of the victim was partially corroborated by the defendant himself and

his father-in-law. Both said that Wager had been to the victim's home twice to sell her firewood. Another witness testified that he had driven Wager to the victim's home on the night of the crime and waited for him in the driveway.

Any confusion about the victim's statement is a matter involving the credibility of the witness and should properly be determined by the finder of fact, the jury.

The residual hearsay exception should be only rarely used where there are exceptional circumstances in which the exception does not fit within any other accepted exception. The federal courts have adopted such a rule in Federal Rules of Evidence 804(b)(5). How can there be a different standard in Federal and State court rules in the search for the truth? Surely Kentucky courts are not less advanced than the federal system. Here the victim is dead, but her statement should be allowed to be introduced so that the jury can determine who speaks the truth. The right of confrontation is compromised only to the extent that a dead victim is forever silent.

The failure to present certified documentation of the Matthews blood test is inexcusable. However the guilt of Wager was not based on the fact of another person's blood type. The failure to offer a certified copy was harmless error. RCr 9.24. The same is true with the argument relating to the failure of the prosecutor to properly complete the strict authentication procedures of KRS 422.040. I join with the majority in admonishing prosecutors to follow the strict procedures required by the law. If they do not, it should be obvious that a majority of this Court will reverse any conviction obtained and hope that a remand will cure the situation. Although it is technically error, the omission of a clerk's certificate relating to the custody of the records standing alone is a very weak ground for reversible error.

The real departure from existing standards of practice occurs when the majority announces that there was reversible prejudicial error resulting from prosecutorial misconduct during the closing argument.

During closing argument, the prosecutor told the jury that he had seen farmers removing an old fence and that they had been scratched by thorns from the fence. He brought one of the fence posts into the courtroom and argued it as some kind of demonstration. Defense counsel did not object to the demonstration on the grounds that it was improper argument but rather objected to the display because the fence post was not admitted into evidence. In my view this argument is not properly preserved for appellate review pursuant to RCr 9.22.

Moreover, this Court seems to have opened a new criteria for reviewing alleged prosecutorial misconduct. Previously, *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978) permitted reasonable latitude in making a closing argument. Earlier it had been held in *Jackson v. Commonwealth*, 301 Ky. 562, 192 S.W.2d 480 (1946) that only when the comments of the prosecutor are entirely foreign to the facts introduced at trial must the conviction be reversed. A criminal conviction should not be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements must be viewed in context. Only by doing so can it be determined whether the comments and conduct affected the fairness of the trial. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1, (1985).

It is inconceivable to me that absent the alleged misconduct of the prosecutor, this verdict of conviction would have been any different. *Smith v. Commonwealth*, Ky., 734 S.W.2d 437 (1987); *Niemeyer v. Commonwealth*, Ky., 533 S.W.2d 218 (1976). *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1984, 76 L.Ed.2d 96 (1983).

The remarks of the prosecutor did not exceed the bounds of reasonable latitude as noted in *Lynem, supra.* He drew reasonable conclusions from the testimony in which Matthews said he was scratched while setting fence posts. Wager questioned a variety of defense witnesses trying to show that Matthews had received the scratches elsewhere. The prosecutor's statements were a fair comment on the evidence presented. Wager was not denied a fundamentally fair trial because the prosecutor showed the jury a thorny fence post. It does not amount to reversible error.

I would affirm the conviction in all respects.

GANT, J., joins in this dissent.