936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Willie J. CRAFT, Petitioner-Appellant,
v.
Ralph EVITTS, Respondent-Appellee.
 No. 89-5908.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1991.
Rehearing Denied Sept. 3, 1991.
 
 Before KEITH and MILBURN, Circuit Judges, and COHN, District Judge.*
 PER CURIAM:
 
 
 1
 Petitioner Willie J. Craft ("defendant") appeals from the June 30, 1989, order denying a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254. For the following reasons, we REVERSE and GRANT a conditional writ of habeas corpus, giving the Commonwealth of Kentucky ninety days in which it must provide a new trial or release defendant.
 
 I.
 A.
 
 2
 The indictment alleges that on or about September 20, 1981, defendant and his codefendant, Walter Frasure ("Frasure"), committed murder by cutting Harry Oakley Christy ("Christy") with a knife. The government alleges that defendant and Frasure murdered Christy at Christy's trailer home after defendant learned of the alleged attempt by Christy to rape Karen Diane Brooks ("Brooks"), the daughter of defendant's former wife. Christy's wallet with papers, but no money, was later found and given to the police. Defendant asserts that he left Christy's trailer to get a beer, returned and left again, announcing that he was going home. He also asserts that he heard a gunshot while waiting in his car, went back to the trailer, and was shot when he opened the trailer door to investigate. He asserts that he started to return to the car, but went back to the trailer to get Frasure. He found Frasure sitting on top of Christy. Defendant asserts that he, followed by Frasure, returned to his car.
 
 B.
 
 3
 On October 20, 1981, the Lewis County Kentucky grand jury returned a two-count indictment which charged defendant and Frasure with murder and first degree robbery. On January 27, 1982, Lewis County Kentucky Circuit Court deferred ruling on Frasure's motion for a separate trial until counsel offered the court what Frasure was going to say and how it was inconsistent with defendant's testimony. The motion was later denied. On June 28, 1982, the case against defendant and Frasure came to trial.
 
 
 4
 Dewey Robert Adams ("Robert Adams") testified that on the day of the murder he was at the apartment of Ester Burton ("Burton"). Burton was Robert Adams' former wife, the former wife of defendant, and mother of Brooks. She had dated Christy. Robert Adams was the father of Brooks. Transcript at 425 (Testimony of Burton). The government incorrectly indicates in its brief that Brooks is defendant's daughter. Respondent's Brief at 6. After Robert Adams' marriage to Burton, defendant was married to Burton for less than a year. Brooks was therefore the stepdaughter of defendant for a short period. Transcript at 667, 671 (Testimony of defendant). Frasure dated Brooks for a while. Transcript at 425 (Testimony of Burton).
 
 
 5
 Robert Adams further testified that defendant was also at the apartment and that defendant told him that he wanted Robert Adams' son, David Adams, to go with him on a trip to Vanceburg or Garrison. He further testified that defendant and Frasure came to his office that afternoon to pick up Robert Adams' daughter, Brooks, and at that time he heard defendant tell Frasure that "I know that he's got a gun.... We'll take that away from him and stick it up his ass." Transcript at 397. Robert Adams also testified that about a month after the killing, he spoke with Frasure who said that "[a]ll I know is I turned to go out the door and [Christy] shot me in the ass.... I just went ape after that." Id. at 402.
 
 
 6
 David Adams testified that defendant tried to get him to go to Garrison, the location of the killing, on the day in question. He testified that he went to Burton's apartment the night of the killing and saw Frasure there covered with blood. David Adams further testified that Frasure told him that "[Frasure and defendant] had been down to [Christy's] house and that [Frasure] was there when [Christy] was being killed." Transcript at 414. He also testified that Frasure had a gun in his back pocket that night which Frasure had explained was Christy's. David Adams testified that Frasure said Christy had shot him. David Adams testified that Frasure told him that Christy was killed for what Christy did to David Adams' sister Brooks. Id. at 420.
 
 
 7
 Burton testified that she told defendant that Brooks had informed her on the day of the killing that she had been to Christy's trailer and that Christy tried to make her go to bed with him. Burton took her daughter to the hospital and was assured that her daughter had not been raped. She informed defendant that day that Brooks had not been raped. Later that day, Burton overheard defendant and Frasure say that they were going to Vanceburg. Id. at 438. Burton further testified that late that night, defendant and Frasure came to her apartment and that defendant told her "[Frasure] held him and I cut the son of a bitch's throat and watched the blood gush from him." Id. at 439. Burton accompanied defendant to the sheriff's office where defendant was questioned. Burton did not relate the substance of the statements given by defendant to the Sheriff, but stated that they were inconsistent with what defendant had told her.
 
 
 8
 At the conclusion of the government's case, defendant and Frasure moved for directed verdicts on the robbery charge. The judge deferred ruling on the motions. Defendant and Frasure also moved for directed verdict on the murder charge but these motions were denied.
 
 
 9
 Frasure took the stand in his defense. He testified that he met with defendant and decided to see Christy to talk about the alleged attempted rape. Id. at 561 (Testimony of Frasure). Frasure testified that he and defendant drove to the trailer in Garrison, Kentucky, where Christy lived. Frasure testified that while defendant went outside to get a beer, Frasure asked Christy about the alleged rape. Christy denied the story. Frasure further testified that Christy got mad and, as Frasure was stepping through the door to leave, Christy shot him in the hip. As he turned, Christy shot him again. Frasure saw the gun, pulled his knife, and stabbed Christy in the chest. Frasure testified that he fell on top of Christy and slashed Christy's throat with the knife. Frasure also testified that defendant was not in the trailer when this occurred. Frasure acknowledged taking the gun from the trailer.
 
 
 10
 On cross-examination, Frasure denied that he heard defendant say "I know he's got a gun but we'll take it away from him and stick it up his ass." Id. at 553. Frasure denied hearing defendant state that "Walter [Frasure] held him and I cut the son-of-a-bitch and watched the blood squirt out of him till he died." Id. at 588. Frasure also denied stating that "[w]e went down and we killed [Christy] for what he did to Diane." Id. at 590.
 
 
 11
 Defendant took the stand and testified that the day of the killing he went to Burton's apartment and she told him that Brooks had been raped. Id. at 671. Defendant testified that he left Christy's trailer to get a beer, returned and left again, announcing that he wished to go home. He also testified that he heard a gunshot while waiting in his car, went back to the trailer, and was shot when he opened the trailer door to investigate. He testified that he started to return to the car, but went back to the trailer to get Frasure. When he arrived, he found Frasure sitting on top of Christy. Defendant testified that he, followed by Frasure, returned to his car.
 
 
 12
 On cross-examination, defendant denied that he tried to get David Adams to go to Garrison or Vanceburg. He also denied stating to Frasure that "I know he's got a gun but we'll take it away from him and stick it up his ass." Defendant denied making the statement to Burton that "Walter held him and I cut the son-of-a-bitch and watched the blood squirt out of him till he died." He also denied telling Burton not to tell people that she had seen him and Frasure that night.
 
 
 13
 After defendant's case, the court granted a motion for directed verdict on the armed robbery count. The court denied a motion for directed verdict on the murder charge.
 
 
 14
 The government called Robert Adams as a rebuttal witness. He testified that defendant said to him at Burton's apartment on the morning of the killing "If you won't go [to Garrison] I know who will go. Walter will." Id. at 757. Defendant's counsel objected to the statement, but only after the question had been answered. The defense attorneys conducted cross-examination.
 
 
 15
 David Adams testified on rebuttal that Frasure stated at Burton's apartment on the night of the killing "If it hadn't been for [defendant] we would not have got hurt." Id. at 759-60. David Adams further testified that when asked why, Frasure responded "[defendant] hit [Christy] and knocked him down. He shot at [defendant] and hit me." Id. at 760. Frasure objected to the statement but the trial court overruled the objection. Id.
 
 
 16
 The trial court instructed the jury on intentional murder, first degree manslaughter, and the defense of self-protection. It denied a request for an instruction on second degree manslaughter. The jury returned a guilty verdict for first degree manslaughter against defendant and set the sentence at twenty-years imprisonment.
 
 B.
 
 17
 Defendant appealed the conviction directly to the Supreme Court of Kentucky and included as a ground an objection to the admission of David Adams' rebuttal testimony concerning defendant knocking Christy down. This is the basis for the instant petition for habeas relief. In its March 29, 1984, decision and order, the Supreme Court of Kentucky refused to reach the merits of the objection because of procedural default-defendant failed to object to David Adams' statement at trial.
 
 
 18
 On April 3, 1987, defendant filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Kentucky. Defendant alleged that he was deprived of his right to confrontation of witnesses because he was not able to respond to David Adams' rebuttal statement. On May 27, 1987, a magistrate issued a report and recommendation that either the conclusory claim of ineffective assistance of counsel was unexhausted or the petition was dismissable because it was a mixed exhausted and unexhausted one. On June 15, 1987, the district court entered an order dismissing the petition, adopting the magistrate's recommendation.
 
 
 19
 On August 23, 1988, defendant filed the instant petition in district court. Warden Ralph Evitts ("respondent") unsuccessfully moved for dismissal of the petition as successive. On March 21, 1989, a magistrate issued a report and recommendation that since the Supreme Court of Kentucky had declined to address the objection as a result of state procedural default, defendant should have pled "cause and prejudice" in federal court. Finding that defendant did not plead cause and prejudice, the magistrate recommended denial of habeas relief. On March 27, 1989, defendant filed objections to the magistrate's report alleging that his trial counsel did not "take interest in the defense, nor work for the benefit of his client." Joint Appendix at 20. He urged the district court to assume jurisdiction to protect his rights of due process and equal protection under the sixth and fourteenth amendments. Id. On June 20, 1989, the district court issued a memorandum opinion and order denying the petition based on the magistrate's report and recommendation.
 
 
 20
 Defendant filed a timely notice of appeal on June 13, 1989. The case was set for a Rule 9 determination, but a Rule 9 panel referred the case for a full hearing and ordered appointment of counsel on May 16, 1990. Defendant had been pro se in the petition for habeas corpus up until that point and had submitted papers with the assistance of a "Legal Aid" at the prison. It is alleged and not disputed that defendant is a functional illiterate.
 
 II.
 A.
 
 21
 Defendant argues that his sixth amendment right to confront witnesses against him was abridged by the admission into evidence of David Adams' testimony, solicited by the government on rebuttal, that Frasure had stated, "[i]f it hadn't been for [defendant] we would not have got hurt" and that "[defendant] hit [Christy] and knocked him down. He shot at [defendant] and hit me." These statements were not part of the government's case-in-chief and defendant therefore did not have an opportunity to cross-examine the declarant, Frasure, after David Adams' testimony. Defendant seeks a writ of habeas corpus to remedy this alleged constitutional violation.
 
 
 22
 Defendant's claim was not reviewed by the Kentucky Supreme Court because of procedural default. The state court refused to reach the merits of his claim because he failed to contemporaneously object. Defendant must therefore show that there was cause for the default and that he was prejudiced by the constitutional error that he has alleged. See United States v. Frady, 456 U.S. 152, 167-69 (1982).
 
 
 23
 The cause prong requires the petitioner to provide a reason for the procedural default.[1] Ineffective assistance of counsel is a sufficient cause, but merely an unsupported allegation of ineffective assistance of counsel is not. McCleskey v. Zant, 111 S.Ct. 1454, 1470 (1991); Alcorn v. Smith, 781 F.2d 58, 61 (6th Cir.1986). Defendant was not represented by counsel in the habeas petition until this appeal. While not explicitly stated, defendant's objections to the magistrate's report is sufficient to raise the issue of ineffective assistance of counsel as cause of the procedural default. The objections alleged that his counsel did not "take interest in the defense, nor work for the benefit of his client." Joint Appendix at 20. We find that defendant's allegation in lay terminology was sufficient to allege cause for ineffective assistance of counsel, despite his failure to use the legal term of art.
 
 
 24
 The failure of counsel to object to David Adams' rebuttal testimony does not appear to us to be a tactical move to sandbag a claim for future adjudication. Frasure objected and had his objection overruled, but defendant's counsel failed to join the objection. By introducing the material in rebuttal, neither defendant could respond to the material in their case-in-chief. In addition to their shared general objection to material inappropriately being introduced in rebuttal, defendant and his codefendant Frasure would have had different objections to the same statement. Defendant could not cross-examine Frasure about statements a witness claimed Frasure made. We find that cause was shown because defendant's objection was not preserved as a result of ineffective assistance of counsel. Ineffective assistance of counsel is established if the lawyer did not perform "at least as well as a lawyer with ordinary training and skill in the criminal law." Alcorn, 781 F.2d at 61 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir.1974)). We find that a lawyer of ordinary training and skill would not have failed to object to the inappropriate rebuttal testimony of David Adams. We, therefore, conclude that the cause prong is met.
 
 B.
 
 25
 The more contested assertion of defendant is that he has shown prejudice. The term prejudice was not precisely defined in the seminal case Wainwright v. Sykes, 433 U.S. 72 (1977), but left for case-by-case determination. Frady, 456 U.S. at 168. Prejudice is determined by examining the entire trial record to see if the result is a conviction that violates due process. Id. at 169. This Court has stated that "[w]here [there] is strong evidence of a petitioner's guilt and a lack of evidence for his claim, the actual prejudice requirement is not satisfied.... Actual prejudice must work to the convicted person's 'actual and substantial disadvantage, infesting his entire trial with error of constitutional dimensions.' " Alcorn, 781 F.2d at 64 (quoting and citing Frady, 456 U.S. at 170, 172).
 
 
 26
 We find that the admission of the improper rebuttal testimony tainted the result of the trial with a constitutional violation. There is not enough incriminating evidence in the record without the improper rebuttal testimony to convince us that the trial would not have had a different result without its admission. There would still be in the record the testimony by Burton that defendant told her after the crime that Frasure held him down and I cut his throat. The other impeaching evidence includes statements that defendant was going to go to Garrison, but defendant was not necessarily going there to commit murder. The record also contains testimony that defendant was going to take the gun away from Christy and "shove it up his ass." This supports the claim that defendant went to Christy to discuss the alleged attempted rape and that he anticipated conflict. It does not, however, directly contradict defendant's story which is that he was out of the trailer when the fight erupted.
 
 
 27
 There is no physical evidence linking defendant to committing the manslaughter or assisting in it. The prosecution can be condensed to prove that defendant had some motive, and was upset. But unlike the government's contention, Brooks is not defendant's daughter, but the daughter of Robert Adams. Defendant intended to visit Christy and had the alleged rape on his mind. He knew Christy might be armed and was prepared to disarm him. There is a dispute as to whether defendant was in the trailer when the dispute erupted, hit Christy, and then slashed his throat, or whether he was outside the trailer, opened the door to discover the conflict in progress, turned away, and then went back to get his codefendant, but never held Christy. To sort out this dispute, the jury had to weigh the absence of physical evidence linking defendant to the crime[2] and the statements of both the defendant and the codefendant against two hearsay statements. One of the hearsay statements was improperly admitted in violation of a right to confrontation. The other statement was Burton's indicating that defendant said that he had slashed Christy's throat.
 
 
 28
 While a reasonable jury could find guilt beyond a reasonable doubt without the testimony contested on this appeal, we find that the testimony substantially prejudiced the defendant's case. In addition to its incriminating nature, the testimony provided corroboration for the Burton's hearsay statement that contradicts the defendant's story.
 
 
 29
 The importance of corroboration is particularly great in this case because the remaining witness, Burton, was severely impeached. Burton admitted that her sworn testimony to the grand jury was contrary to her statements at trial and admitted that during her grand jury testimony she was "lying at that time." Transcript at 494.
 
 
 30
 Furthermore, the Supreme Court of Kentucky has commented that prosecutorial conduct like that performed here is highly prejudical and reversible error. In Wager v. Commonwealth, 751 S.W.2d 28 (Ky.1988), the court held that any out-of-court statement that may reasonably be interpreted as being in the nature of an admission of guilt should not be introduced in rebuttal under the guise of impeaching the defendant in his capacity as witness. In Wager, the Kentucky court concluded that the evidence was highly prejudicial and introduced at the point where it would have the most impact. Wager v. Commonwealth, 751 S.W.2d 28, 29 (Ky.1988). On that basis the court reversed the conviction. The statement, in the instant case, is not an outright admission of guilt, but it is a statement against interest by the co-defendant that makes the alleged fact that defendant committed the crime more likely. As in Wager, the timing of the introduction of this kind of statement is particularly prejudicial.
 
 
 31
 Because the statement was inappropriate for rebuttal, it should not have been admitted at all at that time in the proceeding. Defendant was unable to alter his case-in-chief to meet the testimony. He was also unable to cross-examine the declarant of the statement. Because the testimony formed the corroboration of the very incriminating hearsay testimony that contradicted the defendant's story, we find prejudice.
 
 III.
 
 32
 For the foregoing reasons, we REVERSE and conditionally GRANT the petition for writ of habeas corpus. Within ninety days of entry of this decision, the Commonwealth of Kentucky is to provide defendant a new trial or release him.
 
 
 33
 On Denial of Rehearing.
 
 
 34
 Sept. 3, 1991.
 
 
 35
 KEITH, Circuit Judge.
 
 
 36
 Petitioner Willie J. Craft ("petitioner") appealed from the district court's denial of writ of habeas corpus. The panel filed a per curiam opinion reversing and remanding. Ralph Evitts ("respondent") filed a petition for rehearing. For the following reasons, the petition for rehearing is DENIED.
 
 
 37
 Judge Cohn, dissenting from this denial of rehearing, indicates a concern that the cause prong of the cause and prejudice test was not conceded by respondent. Although the panel's decision indicated in a footnote that respondent may have implicitly conceded the cause prong, the panel determined that in fact the cause prong was met for the reasons stated in the text of the panel's decision. Panel opinion at 7-8. A majority of the panel remains convinced that petitioner has satisfied the cause prong, regardless of whether the respondent has conceded it.
 
 
 38
 For the first time in this litigation, respondent contends in his petition for rehearing that the disputed ground for relief, ineffective assistance of counsel, was not properly exhausted in state court. Respondent, relying on Granberry v. Greer, 481 U.S. 129 (1987), argues that the Court should entertain this new argument even though he raised it for the first time after the panel's decision.
 
 
 39
 In Granberry the Supreme Court addressed the failure of a state to raise exhaustion in district court. In the instant case the state not only failed to raise the issue in the district court, but also failed to raise it on appeal until rehearing. The Granberry Court held that exhaustion was not a jurisdictional requirement. It further held that in each case the court of appeals whould decide whether comity and judicial efficiency require application of the exhaustion doctrine or whether the court of appeals should address the merits. We find that comity and judicial efficiency do not require exhaustion in the instant case for the following reasons: 1) this case has already been heard and decided; 2) further appeals would leave the petitioner in prison for a considerably longer period after the panel has determined that a writ of habeas corpus is appropriate; and 3) there is no need to determine additional facts or state law prior to resolution of the merits.
 
 
 40
 For the foregoing reasons, the petition for rehearing is DENIED.
 
 
 41
 COHN, District Judge. Dissenting.
 
 
 42
 I believe that there may be merit to the warden's petition for rehearing, particularly as to whether he conceded the cause prong of the cause and prejudice analysis and as to whether Craft exhausted his ineffective assistance of counsel claim in state court. Therefore, I would require a response from Craft before ruling on the merits of the petition.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The respondent may have implicitly conceded that the cause prong is met. Without any response to the cause prong, respondent states "[f]irst off, respondent-appellee argues that even if the supplemental brief could be deemed to raise points sufficiently to satisfy the 'cause' prong...." Reply Brief at 9
 
 
 [2]
 Frasure was witnessed covered with blood, but since he had been severely wounded it could have been his own