James BERRY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 16, 1973.

---

Victor W. Dungan, Louisville, for appellant.

Ed Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

James Berry was convicted of selling heroin and the jury fixed his punishment at a fine of $20,000 and a term of 20 years in the penitentiary, this being the maximum punishment under the statutes, KRS 218.020, 218.210(2)(b). We have before us Berry's direct appeal from the judgment of conviction. His counsel on this appeal is not the same as on the trial.

Berry maintains that he was denied a fair trial because of ineffectiveness of counsel and because of a number of alleged trial errors. We shall consider the alleged trial errors first.

A police officer testified that he purchased 19 capsules of heroin from Berry. He was positive in his identification of Berry as the person from whom he bought the drug. Berry's defense was an alibi, supported by the testimony of his girl friend and his brother.

■ The first alleged trial error was the admission of testimony by a police officer as to the effects of taking heroin, its addictive qualities, the possibility that it may cause death, the methods of taking it, and the problems of withdrawal. This evidence was irrelevant to the issue of whether Berry had sold heroin, and should not have been admitted. However, Berry's counsel made no objection to its admission, so the error, as such, was not preserved for appellate review.

■ The second alleged trial error was the admission into evidence, by proffer of a police officer, of a weather-report document which the officer said he had obtained from the Weather Bureau at Standiford Field (the Louisville airport). This was objected to at the trial, the ground of objection not being stated but apparently being that the report was not properly identified and authenticated. The report showed that there had been no rainfall in the Standiford Field area on the night of February 20, 1971, which was the night on which the alleged sale of heroin was made. The report was introduced to rebut the testimony of Berry's alibi witnesses that they were sure in their memory that Berry had stayed with them on the night of February 20, 1971, because it was raining that night.

The weather report was a printed document bearing the certification of the Director of the National Climate Center at Asheville, North Carolina, that it was "an official publication of the National Oceanic and Atmospheric Administration and compiled from records on file at the National Climate Center." We think the report had sufficient authenticity to be admissible. See 32 C.J.S. Evidence § 643, pp. 838, 839.

■ The third alleged trial error was the allowing of a police officer-witness to remain in the courtroom while prior witnesses were testifying. The court ordered the separation of witnesses at the outset of the trial but expressly excepted for the Commonwealth "one police officer." The testimony of the officer in question amounted simply to a corroboration of the purchasing officer's testimony that he de-

livered the capsules of heroin to the police station at 10 p. m. on February 21, 1971. There was no real issue on that fact so we think there was no prejudice even if it were considered that there was error in allowing the officer to remain in the courtroom.

■ The fourth alleged trial error related to the bringing out of the fact that Berry, at the time of the trial, was an inmate of the penitentiary (his probation on a previous felony conviction having been revoked). The purchasing officer had testified that Berry lived on Village West Drive. When Berry took the stand he said he lived on South Seventh Street. The prosecutor, on cross-examination, questioned him as to whether that was where he was "staying now," and after a conference at the bench requested by Berry's counsel, the judge asked Berry some questions, and was answered as follows:

"THE COURT: What address did you say you lived at, sir?

"THE WITNESS: 1125 South Seventh

"THE COURT: That is your usual address, it is not?

"THE WITNESS: Yes, sir.

"THE COURT: You are not residing there at the present time, are you?

"THE WITNESS: No sir, you have me at Kentucky State.

"THE COURT: Well, you don't have to answer that. All right, let's get off of that."

It is difficult to conceive of any valid reason for the inquiry as to Berry's address at the time of trial. However, the questions did not require that Berry give his present address, the matter was not emphasized, and the jury, by a question properly asked for impeachment, was informed that Berry previously had been convicted of a felony;

therefore, we are of the opinion that this incident was not calculated to have any significant prejudicial effect.

The fifth, sixth and seventh alleged trial errors, which relate respectively, to claimed inconsistencies in the prosecutions' evidence concerning the number and color of the capsules of heroin, improper argument by the prosecuting attorney, and the failure of the Commonwealth to offer as witnesses an alleged informant and the wife of the purchasing officer (who the officer said was present when the purchase was made), do not have sufficient merit to warrant discussion.

It is our conclusion that there is nothing in the claimed trial errors to require a reversal of the judgment.

We shall now address our consideration to the question of ineffectiveness of counsel. The circumstances concerning selection of and preparation by counsel were developed at a hearing which this court directed the trial court to hold to resolve inconsistencies and ambiguities in the original record as to those circumstances.

Berry was indicted on April 30, 1971. Initially, he was represented by *employed* counsel, who secured a reduction in bail and several continuances. However, the employed counsel became seriously ill and died.

On January 17, 1972, on Berry's being brought into court, he informed the court that his employed counsel had died and that he had no counsel and no money with which to employ counsel. The court then appointed Gary Lorenz to represent Berry. Lorenz subsequently talked with Berry at the reformatory; discussed plans for the defense; and took notes.

On the day Lorenz was appointed (January 17, 1972) the case was set for trial for February 8, 1972. On that day, John E. Taylor, an associate of the law firm of which Lorenz was a member, appeared to

744

represent Berry. He had never seen Berry before, but he had discussed the case with Lorenz and had read the notes Lorenz had taken when he had talked with Berry. Taylor talked with Berry for 30 to 45 minutes on the morning of the trial, learned who the alibi witnesses were whom Berry had arranged to be present, and tried unsuccessfully to persuade Berry to accept an offer of the Commonwealth that he plead guilty and be given a 10-year sentence. Upon the case being called for trial Taylor announced ready, and the trial was held.

■ This court is committed to the proposition that in order to vacate a judgment of conviction in a criminal case on the ground of inadequate representation by counsel, the court must find that the circumstances of the representation were such as to shock the conscience of the court and to render the proceedings a farce and a mockery of justice. Wahl v. Commonwealth, Ky., 396 S.W.2d 774; Rice v. Davis, Ky., 366 S.W.2d 153. We do not so evaluate the circumstances of the representation in the instant case.

■ It appears that the only defense available to Berry was an alibi. That defense was adequately presented and the trial was fairly conducted. While it was improper for Lorenz, the court appointed-counsel, to delegate the handling of the case to Taylor, and while such delegation should not have been permitted by the court, the delegation did not result in inadequacy of representation under the standard above stated.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

PALMORE, C. J., and OSBORNE, REED and STEPHENSON, JJ., concurring.