**Bill NICKELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

April 11, 1978.

Rehearing Denied May 23, 1978.

Jack Emory Farley, Public Defender, M. Gail Robinson, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Bill Nickell was indicted for the murder of Carl Brewer. KRS 507.020. He was convicted of first-degree manslaughter, KRS 507.030(1), and sentenced to 20 years' imprisonment.

As grounds for reversal it is argued: (1) that the testimony of Brewer's wife was prejudicial and inadmissible; (2) that the trial court erred in overruling his motion for a continuance; (3) that the prosecutor failed to prove beyond a reasonable doubt that he was not acting in self-defense; (4) that the trial court's instructions were improper; (5) that the trial judge erred by admitting a statement made by Bill when he was in custody and so drunk that he was unable to confess voluntarily or to waive his constitutional rights; (6) the prosecutor's closing argument was improper; (7) that he was deprived of effective assistance of counsel because of trial counsel's failure to make proper objections; and, (8) the trial judge failed to follow the sentencing procedures of KRS 532.050.

Counsel at the trial level was the local public defender of Wolfe County. On this appeal Bill is represented by the public defender of the Commonwealth.

This case arises out of an unfortunate encounter between Bill Nickell and Carl Brewer at an IGA parking lot in Wolfe County. On February 22, 1977, Bill and Shirley Brooks met in Campton, Kentucky around 10:30 A.M. and drove out to the "Yello-Boy" restaurant for coffee. According to the testimony of Bill and Shirley,

they then drove in Bill's Cougar automobile to get the van he used as an employee of the American Coal Company. Bill testified that he took a gun that he used as night watchman from the Cougar into the van. Shirley testified that she saw Bill put the gun on his person. Bill testified that he was already wearing the gun before he saw Carl Brewer. Bill and Shirley returned to Campton. Bill testified that he planned to wash the van. There was a bottle of whiskey in the van from which both Bill and Shirley drank. Bill turned into the IGA Supermarket parking lot but the car of Brewer was blocking the entrance. Bill asked Brewer to move his car and an argument ensued. Both Bill and Shirley testified that Brewer cursed Bill and came over to the van where he pulled Bill's hair. Bill left the parking lot, but returned after 10 or 15 minutes to buy paper towels with which to wash the van. Meanwhile, Brewer had gone to get the city marshal, complaining that Bill was drunk and that he and Bill had "gotten into it." The marshal testified that Brewer said he should have killed Nickell, but did not. The marshal returned to the lot with Brewer where he found Bill's van.[1]

The two vehicles were side by side facing opposite directions so that the drivers' sides were adjacent. When Bill got out of the van he testified that he saw Brewer reaching across the seat of his car. The marshal was walking around the front of Brewer's car and did not see Bill shoot Brewer. He did, however, hear three shots and saw Bill holding a gun and standing two feet from Brewer's car immediately after the shooting. Brewer was in his own car when he was killed. There was no evidence that he was armed, no weapon was found, and none of the witnesses saw him with a weapon.[2] Brewer was taken to a Lexington hospital where he subsequently died as a result of the three wounds—one under each shoulder blade and one to the right of the center of the spine. Bill was arrested immediately and taken into custody where he made a statement to Detective Roy Ison.

■ Bill's first assignment of error is that it was prejudicial for the Commonwealth to introduce the testimony of Brewer's wife. She was not a witness to the tragic incident, and testified only as to when she last saw her husband alive and to the number and ages of her children. Bill's counsel, in one of his few objections throughout the entire trial, objected to her testimony insisting that it was immaterial and solely designed to play upon the emotions of the jury. In light of all the evidence and Bill's admission that he shot Brewer, this testimony cannot be said to be so prejudicial as to require reversal. The evidence in this case is not close, nor does the use of Brewer's wife as a witness reach the level of "flagrant prosecutorial misconduct" as Bill charges. Her testimony, although irrelevant to the issues in the case, was not prejudicial error.

Bill next argues that the trial court abused its discretion by overruling his motion for a continuance. He was arraigned on April 12, 1977, the same day the indictment against him was returned. Because the public defender was not available on that day, a local attorney was called in to assist Bill. The trial was set for April 19, 1977. On April 19, the case was called and Bill was represented by the local public defender, Mr. Kelly, and Mr. Owen, an attorney who had been appointed to assist Bill.[3] Mr. Kelly moved for a continuance on the ground that a week was not enough time to prepare a defense on the serious charge of murder. Mr. Owen also noted

---

1. The evidence conflicts as to who returned to the lot first. At trial Bill testified that Brewer pulled into the lot at the same time he did. Shirley testified that Brewer was there first but she had given an earlier statement that she and Bill drove into the lot before Brewer did.

2. Bill asserts that the dispute was over a gun Brewer had stolen from American Coal Company. There was no other evidence of such a gun.

3. The trial actually did not begin on April 19. The trial court found that it was impossible to select an impartial jury from Wolfe County. The trial began one day later after a jury from Powell County was selected and sworn.

that he had been involved in preparing tax returns that week.

■ There was absolutely no abuse of discretion on the part of the trial judge in overruling the motion for continuance. Both Kelly and Owen had worked on the case the week prior to trial. Bill was on bond and available to assist in his defense, which was self-defense. Bill's counsel stated that the theory of Bill's side of the case was "what was in the defendant's mind" at the time the shooting occurred. There was no question of misidentification. Bill admitted shooting Brewer. There was no problem pertaining to missing witnesses. In fact, Owen stated that Bill had rounded up a witness that very morning. Under these facts no prejudice or "manifest injustice" resulted from the denial of the motion to continue. *Taylor v. Commonwealth*, Ky., 545 S.W.2d 76 (1976).

■ Bill contended that he shot and killed Brewer in self-defense. He testified that when he saw Brewer reach across the seat to the glove compartment he feared that Brewer was reaching for a gun and he then shot Brewer. The city marshal testified that Brewer never got out of his automobile. After the shooting, the marshal heard Bill say, "I'll teach you, god damn you, never to run over me any more." None of the witnesses testified to seeing Brewer with a weapon, nor was any weapon found on him after the shooting.

Bill testified that he was afraid of Brewer because at the earlier encounter at the parking lot Brewer had said, "I ought to kill you." Bill asserts that this record contains uncontradicted and conclusive evidence that he was acting in self-defense when he shot and killed Brewer.

A review of the evidence, including that of Bill and his companion Shirley, shows that it was not conclusive that Bill was acting in self-defense. While both of them testified that Brewer reached back as if to get a weapon, their testimony showed that Bill had left the scene with a gun tucked in his belt, approached Brewer's car, and shot him. Bill shot Brewer downwardly through the open window of his car. The bullets entered Brewer from the back, not the front. How then, do these facts show conclusive proof of self-defense?

■ Coupled with those facts was the testimony of the city marshal who was present when Bill shot Brewer. The marshal testified that Brewer never left the car. It is not logical that a man claiming self-defense would return to the scene of a fight if he wanted to avoid trouble. If perchance he saw his protagonist, he would retreat in order to avoid confrontation. That is not evidence of self-defense, but of murder or a lesser degree of homicide. Thus, it was an issue for the jury. In any event, Bill's counsel failed to move for a directed verdict. Because no motion for a directed verdict was made, there was no error. There was sufficient evidence to nullify the assertion of self-defense. The issue was properly submitted to the jury and there was ample evidence in the record to support its finding. *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977).

■ Bill's next complaint is that the court's instructions on first-degree manslaughter and self-defense were defective. Bill's trial counsel neither offered any instructions nor objected to those given by the trial court. Thus there is no error for this court to review. RCr 9.54, *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (Decided this date).

■ Two of Bill's other arguments also represent matters which were not brought to the attention of the trial court. It is argued that the prosecutor's closing argument was improper in that it did not fairly represent the evidence at trial. Because the trial judge had no opportunity to rule on the matter, there was no error. However, the argument is not inflammatory nor is it misleading.

■ Bill also contends that the court should have excluded his "confession" from the jury's consideration. The statement was not a formal confession, but merely an oral statement made by Bill to State Detective Ison. Ison testified that he advised

Bill of his constitutional rights. Ison's testimony consisted of a case report of his investigation. There was no objection that the statement was involuntary because of Bill's alleged intoxication. Since this matter was not presented to the trial court for consideration, there was no error. In any event, the statements were not any more prejudicial than Bill's own testimony at the trial.

■ Bill's next argument is that as a consequence of his trial counsel's failure to make proper objections so as to preserve matters for appellate review, he was deprived effective assistance of counsel. The record reflects that trial counsel failed to make certain objections and motions which should have been made. However, the record does not show trial counsel's performance to be such as to shock the conscience of the court so as to render the proceedings a farce and mockery of justice. *Berry v. Commonwealth*, Ky., 490 S.W.2d 741 (1973).

■ It is apparent in this case, and in too many others that pass in review before this court, that the public defender simply sifts out a trial record to find "error." Then the strategy is to allege that an error has occurred regardless of the fact that the trial defense counsel did not contend it was error, or for reasons of trial tactics, decided not to do so and then allege that these errors should have been preserved and thus try to convince this court that trial counsel was ineffective. This writer calls to mind an apt quatrain that best describes such situations as that presented here:

"Oh wad some power the giftie gie us
To see oursels as others see us!
It would frae monie a blunder free us,
An' foolish notion."[4]

This court recently phrased it in this fashion:

"It is easy for brilliant young lawyers to flyspeck a trial record and pick out flaws in the manner in which it was practiced."[5]

In any event, the issue of ineffective assistance of counsel was not raised by a proper motion in the lower court and is raised for the first time on appeal and is not properly before this court.

■ Bill's final argument is that the mandatory sentencing procedures of KRS 532.050 were not followed. He specifically cites that section which provides:

"Before imposing sentence, the court shall advise the defendant or his counsel of the factual contents and conclusions of any presentence investigation or psychiatric examinations and afford a fair opportunity and a reasonable period of time, if the defendant so requests, to controvert them. The sources of confidential information need not, however, be disclosed." KRS 532.050(4).

Bill correctly cites language in *Brewer v. Commonwealth*, Ky., 550 S.W.2d 474 (1977), which states that KRS 532.050 is mandatory and that "the record of the proceedings should clearly disclose the fact that the trial court has fully complied with 532.050 . . . ." *Brewer, supra*, at 476. The Commonwealth cannot seek solace in *Shannon v. Commonwealth*, Ky., 562 S.W.2d 301 (Decided January 10, 1978). *Shannon, supra*, was modified February 21, 1978. In the modification, this court held: "The record reflects that the appellant (Shannon) was sentenced in the manner as required by KRS 532.050."

The record in this case reflects that the trial court failed to comply with the mandate of KRS 532.050. Therefore, the judgment must be vacated and the case remanded for resentencing in conformity with *Brewer, supra*.

The judgment is vacated and the cause remanded to the Wolfe Circuit Court for resentencing. In all other respects, the judgment is affirmed.

All concur.

---

4. Robert Burns, *To A Louse* (1786) St. 8.

5. *Meadows v. Commonwealth*, Ky., 550 S.W.2d 511 (1975).