Michael Len BYRD, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 90–SC–26–MR.

Supreme Court of Kentucky.

Feb. 13, 1992.

Rodney McDaniel, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., E.M. Lowery, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Byrd of murder and sentenced him to twenty years in prison. Byrd raises 11 assignments of al-

leged error. We will treat each assignment of error in the course of the opinion.

Byrd was charged with the murder by beating the victim to death during the course of a robbery. His first trial ended in a mistrial because the jury was unable to reach a verdict. He was tried again and conviction resulted. The victim died sometime between Noon on January 25 and Midnight on January 26, 1989, as a result of a blow over his eye. His wallet and car were stolen.

■ Byrd was not prejudiced by his absence at an in camera juror inquiry. The raising of this issue for the first time in a motion for judgment notwithstanding the verdict or a new trial does not preserve it for appellate review. RCr 9.22.

The trial judge conducted an in camera examination of the four jurors who had read parts of a newspaper report concerning the trial. The trial judge invited defense counsel and the court reporter but Byrd did not request inclusion. Although both defense attorneys participated in the hearing, neither objected to the absence of Byrd. There is no evidence that the trial judge prohibited Byrd from joining defense counsel. Byrd clearly knew that a hearing was being conducted, and he offered nothing to suggest that his absence was anything other than a personal choice.

Section 11 of the Kentucky Constitution requires that an accused has the right to be heard by himself and counsel and to meet the witnesses face-to-face. RCr 8.28(1) states that a defendant must be present at every "critical" stage of his trial. However this right to be present is not all encompassing. In this instance it is clear that Byrd waived any right to be present at the in camera inquiry by not requesting to be present. *Cf.* RCr 9.22; *West v. Commonwealth,* Ky., 780 S.W.2d 600 (1989). Byrd was not unduly prejudiced by his absence. He was represented by able counsel who questioned the jurors on possible influence, and the trial strategy cannot be questioned at this time.

■ The trial judge correctly overruled Byrd's motion for a mistrial based on juror exposure to a newspaper article. Four jurors admitted that they saw a newspaper account of the trial while it was in progress. Each of them was questioned separately by the trial judge, and of these four, one was excused as an alternate. Byrd argues that the exposure of the jurors to the newspaper article was unfairly prejudicial.

One juror stated that he had begun to read the article, and remembered the admonition of the trial judge not to read such newspaper accounts and did not finish the article. He said he understood the outcome of the previous trial was: 8 guilty; 2 not guilty and 1 undecided. He was examined by the defense and admonished at length by the trial judge. A second juror remembered only that he read that they had an earlier trial and found the defendant not guilty. He stated that he already knew this and was not influenced by the article. He was also examined by the defense and admonished by the trial judge. A third juror stated that he did not read all the article but read the headline and remembered that he should not read any of it and stopped. The only thing that he remembered was that it was a retrial and there were 8 for conviction and 3 for acquittal and 1 undecided in the first trial. As with the others, she denied that she had been influenced by the information because she already knew it. She was examined by the defense and admonished by the trial judge.

Here the facts differed greatly from those in *United States v. Williams,* 568 F.2d 464 (5th Cir.1978) which was a fact-intensive case. There was no prejudice to Byrd because two of the jurors were aware that the previous jury was unable to convict him and one of the jurors in question believed that he had been found not guilty. The jurors were questioned, and there is no evidence that they gained any other information from the article. In addition, they were specifically admonished not to consider the report or anything not in evidence at the trial.

■ Where publicity prior to and during a trial is neither inherently prejudicial

nor unusually extensive, the accused must assume the additional burden and show actual jury prejudice. *Gordon v. United States*, 438 F.2d 858 (5th Cir.1971). A trial judge has discretion in determining the prejudicial effect of a juror's misconduct particularly if there is an opportunity to give a curative admonition. *Polk v. Commonwealth*, Ky.App., 574 S.W.2d 335 (1978), citing *Butler v. Commonwealth*, Ky., 387 S.W.2d 867 (1965).

■ It was not reversible error for the trial judge to deny Byrd's motion for a mistrial because not every incident of juror misconduct requires a new trial. The true test is whether the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. *United States v. Klee*, 494 F.2d 394 (9th Cir.1974). We agree with the statement in *Klee, supra*, when a:

> Wise and experienced judge who presided at the trial and observed the jury, comes to such a conclusion, it is not for us to upset it. The trial judge was in a better position than we are to determine whether what happened was prejudicial.

There was no abuse of discretion in this situation and the decision of the trial judge was not reversible error.

■ It was not reversible error for the trial judge to admit evidence of a defense witness's bias and interest. During the trial the prosecution presented a statement allegedly made by Byrd to another inmate and overheard by a third inmate. The third inmate testified to the conversation. The second inmate to whom the statement was made testified that the conversation never took place. On cross-examination, the prosecution was allowed to impeach the defense witness who denied the conversation by showing that after the first trial, the same defense witness had assaulted the informing witness by beating him with a sock filled with five bars of soap. The informing witness suffered a concussion and required stitches in his forehead.

■ The interest of a witness, either friendly or unfriendly, in the prosecution or in a party is not collateral and may always

be proved so as to allow the jury to determine credibility. It may be proved by the witness's own testimony upon cross-examination or by independent evidence. *Parsley v. Commonwealth*, Ky., 306 S.W.2d 284 (1957).

■ The prosecution sought to challenge the credibility of the defense witness's contradictory testimony by showing his interest, bias and hostility. Civil Rule 43.07, which prohibits impeachment of a witness by evidence of particular wrongful acts, is not applicable because the wrongful act here is directly related to the interest of the witness in the case. The contradictory defense witness was shown to have a hostile motive of revenge against the informing witness and to be loyal to Byrd as well as biased towards the litigation in question. *Cf. Faulkner v. Commonwealth*, Ky., 423 S.W.2d 245 (1968).

It was not reversible error for the prosecutor to make references to Byrd's failure to testify. The two comments challenged by Byrd were made by the prosecutor during summation. Only one of the comments was objected to. The unpreserved comment indirectly alluded to the failure to testify. The second comment, which also referred to the failure to testify, was objected to but the objection was overruled.

■ The improper comment by the prosecutor about the failure to testify was an inadvertent reference. A prosecutor's comment on the failure of a defendant to testify must be manifestly intended to reflect on the accused's silence or of such a character that the jury would naturally and necessarily take it as such to constitute prejudice. *Bagby v. Sowders*, 894 F.2d 792 (6th Cir.1990).

■ It was not reversible error for the prosecutor to comment about Byrd's exercise of his rights during custodial interrogation. This allegation of error is totally unpreserved.

After Byrd was taken into custody and given his *Miranda* warnings, he answered various questions asked by the police but stopped the inquiry somewhere along the way and requested counsel. At trial, dur-

ing opening statement, the prosecutor stated that Byrd asked that the questioning be terminated and that no further questions were asked.

Byrd was questioned twice by the police; first on January 31, 1989 and later, on February 10, 1989. He was given the *Miranda* warnings on each occasion, and the interviews were taped. During the testimony of the investigating officer, the question of custodial interrogation arose, and the police witness stated that Byrd did not talk to him any further. He said that Byrd was out of the notion of talking any more and said that he wanted to talk to a lawyer. In closing argument, the prosecutor stated that Byrd drifted out of the mood to make that statement and it was never made. *United States v. Williams*, 556 F.2d 65 (D.C.Cir.1977), states that the prosecution may not draw attention to the exercise of the right to become silent after speaking.

*Williams, supra,* denied relief on the basis of its finding that testimony about the exercise of constitutional rights did not play a significant role in producing the verdict. The testimony that led to the conviction of Byrd was the evidence that he was seen driving the victim's car on January 25 which contradicted his alibi that he was left abandoned miles from town. What was damaging was not any testimony about the defendant's silence, but the testimony of what the defendant said before he decided to stop. *Cf. Williams.*

■ We do not believe that this issue rises to the status of manifest injustice or palpable error as considered by RCr 10.26 or *Stone v. Commonwealth*, Ky., 456 S.W.2d 43 (1970). Error is substantial where considering the entire case, the substantial rights of the defendant are affected or it appears likely the result would have been different had the error not occurred. *Scott v. Commonwealth*, Ky., 495 S.W.2d 800 (1972).

■ There was no reversible error in the comment made by the trial judge during voir dire examination about reasonable doubt. Byrd concedes that this issue was not properly preserved for appellate review, and we can find no manifest injustice

or palpable error pursuant to RCr 10.26. The trial judge did not define reasonable doubt. Here one of the jurors approached the bench and discussed her reservations with the trial judge and counsel about the standard of proof. The trial judge briefly commented about reasonable doubt. The defense counsel made no objection. The juror was not selected to hear this case, and the entire discussion was out of the hearing of any other prospective jurors.

RCr 9.56(2) prohibits the definition of the term "reasonable doubt." Here there is no allegation that the trial judge ever sought to define "reasonable doubt" when instructing the jury. The only basis for Byrd's allegation is an affidavit by defense counsel that a juror was overheard to say that we agree to forget about reasonable doubt because nobody knows what it is any way. There is no evidence that prospective jurors overheard or were in any way influenced by the bench discussion. The affidavit of defense counsel was overruled by the trial judge, and we decline to give it further credence.

■ The remarks of the prosecutor during closing argument do not amount to reversible error. Byrd claims that the closing argument by the prosecutor was fundamentally unfair and substantially prejudiced his right to a fair trial. He maintains that remarks concerning the punishment for forgery and another exhortation to the jury to consider their responsibilities were at fault. The trial judge overruled a defense objection to the forgery penalty remark because the prosecution may present its motive in this case. Clearly neither forgery nor the punishment therefor was in evidence, but we do not believe this isolated remark presented a situation of undue prejudice or was inflammatory. *See Nickell v. Commonwealth*, Ky., 565 S.W.2d 145 (1978).

■ A review of the record indicates that the prosecutor did say that "What you do here sends a message to our community." However, this closing argument does not tend to cajole or coerce the jury as prohibited by *Jackson v. Commonwealth*,

301 Ky. 562, 192 S.W.2d 480 (1946), so as to amount to reversible error. This jury was told that the community wanted justice in the form of a proper finding of either innocence or guilt and was requested to do the right thing. It was also given a strong reminder of the burden and standard of proof. We do not believe the closing argument by the prosecution amounted to reversible error. *Cf. Donnelly v. DeCristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

■ It was not reversible error for the trial judge to deny Byrd's motion for a change of venue. An evidentiary hearing was not required. On June 15, 1989, Byrd moved the trial judge for a change of venue prior to his first trial and an evidentiary hearing was held at which the petition was denied. Byrd renewed his motion on November 20, eight days prior to his second trial. He did not accompany the renewed motion with affidavits and added to his earlier motion a newspaper article regarding the first trial which was published on August 11.

■ A request for a change of venue and supporting documentation must be addressed to conditions existing at or near the time of trial. *Howard v. Commonwealth*, Ky., 395 S.W.2d 355 (1965), held that a request did not present the state of public opinion when made six months later. Here, the time between the first motion and the retrial is more than five months. It was not an abuse of discretion for the trial judge to deny the motion. *Brewster v. Commonwealth*, Ky., 568 S.W.2d 232 (1978).

The August 11 newspaper item does not necessarily indicate that the report was prejudicial. A motion for change of venue rests in the sound discretion of the trial judge and will not be reviewed except for an abuse of such discretion. The discretion of the trial judge is given great weight because he is present in the county and presumed to know the situation. *Nickell, supra.*

Here the trial judge could determine the necessary matters in contention and there was no showing of a reasonable likelihood that the defendant could not receive a fair trial. *Whitler v. Commonwealth*, Ky., 810 S.W.2d 505 (1991).

The prosecution did not introduce evidence tending to show that Byrd had committed crimes not charged in the indictment. This claim of error focuses on a rather indirect suggestion that Byrd may have been attempting to steal valuables from the home of the victim's brother. No other crime was alleged and there was no evidence tending to show that Byrd had committed another crime. The authorities cited by Byrd are distinguishable and unconvincing.

■ Byrd's allegations of a conflict of interest resulting from his counsel's having previously represented a key prosecution witness were not properly preserved for appellate review. We do not believe they rise to the level of manifest injustice as contemplated by RCr 10.26 and *Stone, supra.*

■ Byrd claims that the trial judge breached a duty to determine if Byrd was willing to waive his right to effective assistance of counsel because of an agreement between defense counsel and a prosecution witness. A review of the record indicates that Byrd's counsel had promised the informing witness that she would not bring up confidential information about his background. The informing witness was in jail for a bad check conviction and his credibility certainly would have been subject to attack. There is no evidence to indicate that the cross-examination of the informing witness was inhibited as a result of some sort of confidential relationship. Counsel's statement does not present the kind of situation that rises to an appearance of impropriety as distinguished from a mere speculation. There was no conflict of interest so as to disqualify defense attorneys. *Cole v. Commonwealth*, Ky., 553 S.W.2d 468 (1977). There must be an actual conflict of interest which adversely affected the lawyer's performance to challenge a criminal conviction or to demonstrate a violation of Federal Sixth Amendment rights.

*Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

It was not reversible error for the trial judge to decline to have an evidentiary hearing on the motion for a judgment notwithstanding the verdict or for a new trial. Here the motion was untimely filed on December 7, because the jury verdict was rendered on November 30, 1989 and the motion for a new trial had to be served on or before December 5, pursuant to RCr 10.06 and 10.24. *Marcum v. Commonwealth,* Ky., 412 S.W.2d 241 (1967). In any event there was no abuse of discretion by the trial judge in overruling the motions.

Any concern about cumulative error is nonprejudicial. Many of the alleged errors were not properly preserved and should not be reviewed. The level of errors in the present case does not rise to a prejudicial plain. The unpreserved errors were not so substantial as to require the judgment to be reversed.

Having reviewed all of Byrd's assignments of error to the trial court, we find none of his arguments individually requires reversal of his conviction. In addition, this Court has also considered his concern that cumulative error might arise so as to deny him his right to a fair trial. After careful consideration, we must reject any such conclusion in this case. *Milburn v. Commonwealth,* Ky., 788 S.W.2d 253 (1990).

The judgment of conviction is affirmed.

STEPHENS, C.J., and REYNOLDS and SPAIN, JJ., concur.

LAMBERT, J., concurs in result only.

COMBS, J., dissents by separate opinion in which LEIBSON, J., joins.

COMBS, Justice, dissenting.

I respectfully dissent, and would reverse and remand for a new trial.

With respect to the three jurors' reading of the newspaper report of the trial, the aggrieved defendant can find little solace in the fact that "they were specifically admonished not to consider the report" (ante at 274), for these were the same jurors who had already violated an admonition "not

[to] read any ... accounts of this trial which might appear in the newspaper." At least two of these jurors read at least enough of the story to learn the previous jury's vote, and were sufficiently impressed to be able to recall when examined that there had been eight votes to convict. At the time they gained this knowledge, there was evidence yet to be heard in the trial in progress. Not only was outside information prohibited, but the jurors were not to discuss the case even among themselves, nor to form *any opinion.* RCr 9.70. A principal aim of this rule is to ensure that no juror will be influenced by a premature opinion—not his/her own, not that of any colleague, and certainly not that of anyone else. Perhaps it was only a little prejudicial for one of these jurors to know at this juncture that eight of twelve persons similarly situated had, upon hearing the whole case, been convinced of guilt. Perhaps this juror was unmoved by the knowledge that two out of three jurors surveyed recommended conviction. Perhaps it was only a little more harmful when a second juror, and then possibly a third, acquired this information. Perhaps their tainted opinions had minimal effect upon the remaining members of the jury during deliberations. But on the other hand, perhaps these irregularities determined the outcome of the trial.

And quite probably the defendant's presence at the in-chambers examination of these jurors, which proceeding resulted in his being tried by them, would not have prevented the court's denial of the motion for mistrial. Nevertheless, Section 11 of the Kentucky Constitution guarantees his right to be heard "by *himself and* counsel." (Emphasis added.) Section 11 does not say "or counsel," and the presence of counsel does not justify the absence of the party in peril. The majority notes that Byrd "offered nothing to suggest that his absence was anything other than a personal choice." *Ante* at 274. I venture to suggest that neither the trial court nor counsel spent a passing thought on this constitutional right, and Byrd was never made aware of it, wherefore he could not

have made an informed waiver or "personal choice." Choice requires knowledge that alternatives exist.

It was also error, I believe, to admit evidence of a defense witness's assault upon a prosecuting witness after the first trial. These two had offered, and offered again, contradictory testimony. The fact that the one had assaulted the other bore no relevance to the credibility of either. The assault certainly demonstrated hostility between the *witnesses* (which was already obvious, considering that each, by his testimony, effectively accused the other of lying). But it did not demonstrate that one more than the other had any particular interest, bias, or hostility for or against a *party*. The evidence had nothing to do with truthfulness; it merely showed a particular wrongful act, which is not legitimate impeachment, serving only to inflame the jury against the aggressor and his testimony. CR 43.07.

The testimony that Byrd had terminated a post-arrest interrogation and demanded counsel was patently inadmissible. Perhaps this incident alone would not require reversal, particularly since no objection was made. And the prosecutor's arguments touching on the defendant's silence were in this case not highly prejudicial. But by my count, there are eight issues in this appeal which are treated by the majority as "not *reversible* error," or "no *reversible* error." (Emphasis added.) As a camel can bear but a finite number of insignificant straws, so a trial can remain fair under a burden of only so many non-reversible errors. Upon reviewing this record and its accumulation of errors, I cannot affirm the integrity of the trial nor the reliability of the verdict.

LEIBSON, J., joins in this dissent.